No. 99,646

In the Matter of STEPHEN JAY DENNIS, *Respondent*.

(188 P.3d 1)

Opinion filed July 18, 2008.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the brief for petitioner.

*Stephen J. Dennis*, respondent, argued the cause and was on the brief pro se.

*Per Curiam*: This is a contested proceeding in discipline filed by the office of the Disciplinary Administrator against Stephen J. Dennis, of Overland Park, Kansas, an attorney admitted to the practice of law in Kansas. The formal complaint filed against Dennis alleged several violations of the Kansas Rules of Professional Conduct (KRPC) relating to the respondent's representation in two matters before the United States District Court for the District of Kansas. A unanimous hearing panel found that the respondent's conduct violated KRPC 1.1 (competence) (2007 Kan. Ct. R. Annot. 384), 1.3 (diligence) (2007 Kan. Ct. R. Annot. 398), 1.16(a)(1) (declining or terminating representation) (2007 Kan. Ct. R. Annot. 487), 3.1 (meritorious claims and contentions) (2007 Kan. Ct. R. Annot. 500), 3.2 (expediting litigation) (2007 Kan. Ct. R. Annot. 503), 3.3(a)(1) (candor toward tribunal) (2007 Kan. Ct. R. Annot. 508), and 8.4(d) (misconduct) (2007 Kan. Ct. R. Annot. 559). Having found these violations, the hearing panel recommended that Dennis be indefinitely suspended from the practice of law.

The respondent now takes exception to the panel's jurisdiction, conclusions of law, and recommended discipline.

## FACTS

Dennis was indefinitely suspended from the practice of law in Kansas on October 29, 1999. *In re Dennis*, 268 Kan. 48, 991 P.2d 394 (1999). This suspension was based on a hearing panel's findings that the respondent's representation of four clients violated Kansas Rules of Professional Conduct (KRPC) 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.15 (safekeeping property), 1.16

(declining or terminating representation), 3.3 (candor toward the tribunal), and 8.4 (misconduct), as well as Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222) (failure to cooperate and respond to inquiries in a disciplinary investigation). 268 Kan. 48. The respondent has not been reinstated to practice law in this state since he was indefinitely suspended.

In addition to his suspension in this state, the respondent was disbarred by the Tenth Circuit in 1999 for failure to submit a timely response to court orders and failure to perfect a docketing statement; suspended from the practice of law in Missouri as reciprocal discipline to the 1999 suspension in this state; suspended from practicing in the Western District of Missouri; and administratively suspended in Minnesota.

On March 13, 2002, Judge Wesley Brown signed an order permitting the respondent to practice under the supervision of another attorney, Dennis Egan, in the United States District Court for the District of Kansas. On November 18, 2003, Judge Brown signed an order that permitted the respondent to practice without supervision before that court.

This disciplinary action was initiated as a result of Dennis' representation in two cases—*Sunderman v. Westar Energy, Inc.*, case number 05-2347JWL (the Sunderman litigation), and *Francis v. Sprint United Management Co.*, case number 05-CV02062 (the Francis litigation)—filed while the respondent was practicing independently in federal court. In his brief before this court, the respondent does not dispute the hearing panel's factual findings, but instead asserts that these findings do not constitute clear and convincing evidence of the violations found. We therefore adopt the panel's factual determinations, as set forth below.

The Sunderman Litigation

In August 2005, the respondent filed a lawsuit in the United States District Court for the District of Kansas on behalf of Derrick Sunderman against Sunderman's former employer, Westar Energy. Westar was represented by Stephanie Scheck, who eventually filed a disciplinary complaint against the respondent for his rep-

resentation in that matter. The hearing panel summarized the respondent's conduct during the Sunderman litigation as follows:

*"Motion for Partial Summary Judgment*

"9.    On January 13, 2006, Westar filed a motion for partial summary judgment. The Respondent failed to file a timely response. Thereafter, on February 16, 2006, the Court issued an order to show cause. The Court's order required the Respondent to show cause by February 27, 2006, why the motion should not be granted. The order also required the Respondent to file a response to Westar's motion for partial summary judgment by March 1, 2006. The Respondent did not file a response to the show cause order. Additionally, the Respondent did not file a response to Westar's motion for partial summary judgment. At the hearing on this matter, Judge [James] O'Hara summed up the effect the Respondent's silence had as follows:

'. . . and even if a motion of a dispositive and serious nature, such as the defendant's partial summary judgment motion in this case, can and technically should be granted as unopposed, a very practical problem that's created in this situation is that by virtue of Mr. Dennis' silence, it's at least possible that Judge Murgia's law clerk, or one of them, was drilling valuable time into a project that was unworthy of that time.

'And as I think I explained to Mr. Dennis during the telephone status conference that I had with him and his opposing counsel on June 30, 2006, common sense and simple courtesy would suggest in this situation that if there were no meritorious argument that could be raised on behalf of the plaintiff to the defendant's motion, that the plaintiff would file some sort of pleading or at least communicate in some form with Judge Murgia's office to the effect that the motion was uncontested.'

"10.    In his Answer to the Formal Complaint in the instant disciplinary case, the Respondent stated that a response to Westar's motion for partial summary judgment was not necessary as the motion was well founded.1 [Footnote 1: While the Respondent never provided a written response to Westar's motion for partial summary judgment nor did he provide a response to the Court order to show cause, on June 30, 2006, during a telephone conference call, the Respondent indicated that he had no objection to the Court granting the motion for partial summary judgment. Then, on July 5, 2006, the Respondent filed a 'Stipulation of Dismissal of Count II with Prejudice' without conferring with Westar's counsel.]

*"Scheduling Order*

"11.    On January 17, 2006, the Court issued a scheduling order setting various deadlines. Specifically, the Court ordered the parties to make a good faith settlement offer by January 27, 2006. The Respondent did not make a good faith settlement offer by January 27, 2006. Further, the Respondent did not make a good faith settlement offer until April 21, 2006.

"12.    In addition, in the scheduling order, the Court ordered the parties to file a confidential settlement report by February 24, 2006. The Respondent failed to file a confidential settlement report by February 24, 2006.

"13.    On March 10, 2006, the Court entered an order directing the Respondent to immediately inform the Court of the status of the confidential settlement statement. The Respondent failed to immediately inform the Court of the status of confidential settlement statement as ordered. Thereafter, on April 17, 2006, the Court issued an order to the Respondent to show cause by April 21, 2006, why the Respondent should not be held in contempt of court for disregarding the March 10, 2006, order.

"14.    On April 21, 2006, the Respondent provided a confidential settlement statement to the Court.

"15.    The scheduling order also required the parties to file the Rule 26 disclosures by January 27, 2006. The Respondent did not timely file the Rule 26 disclosures. On February 26, 2006, the Respondent filed the Rule 26 disclosures.

"16.    Finally, the Court directed the parties, in the scheduling order, to provide preliminary witness and exhibit lists by March 13, 2006. The Respondent failed to provide a preliminary witness and exhibit list.

*"Discovery*

"17.    The scheduling order also directed that discovery be completed by June 2, 2006.

"18.    On February 17, 2006, Westar provided the Respondent with the Defendant's First Set of Interrogatories and the Defendant's First Request for Production. The Plaintiff's responses were due on March 22, 2006. On April 3, 2006, counsel for Westar contacted the Respondent by telephone to inquire about the status of the outstanding discovery. The Respondent promised to provide the responses by April 14, 2006. Counsel for Westar confirmed the agreement in writing. The Respondent failed to provide the responses by April 14, 2006, as promised.

"19.    On April 20, 2006, counsel for Westar sent the Respondent a golden rule letter directing the Respondent to provide responses to the discovery requests by April 24, 2006. On April 21, 2006, the Respondent sent an electronic mail message to counsel for Westar promising that the discovery responses would be electronically submitted to Westar no later than April 24, 2006. The Respondent failed to provide the responses by April 24, 2006, as promised.

"20.    Because the Respondent failed to provide the discovery responses as promised, counsel for Westar sent the Respondent an electronic mail message. The Respondent did not respond to the message. However, on April 26, 2006, the Respondent filed a Notice of Service with the Court, stating that he had mailed the responses to the discovery requests that day.

"21.    Counsel for Westar did not receive the discovery responses by mail as indicated in the Notice of Service.2 [Footnote 2: The Respondent claimed that he forwarded the responses to the discovery requests on April 26, 2006, but that

he failed to maintain a copy of the discovery responses. On September 22, 2006, the Respondent finally provided the responses to the discovery requests to counsel for Westar.]

"22.  On May 5, 2006, counsel for Westar filed a motion to compel discovery and a memorandum in support of the motion. The Respondent failed to respond to Westar's motion to compel.

"23.  On May 23, 2006, the Court granted Westar's motion to compel and directed the Respondent to serve written answers to Westar's discovery requests by June 6, 2006. The Respondent failed to serve written answers to Westar's discovery requests by June 6, 2006, as ordered. Additionally, the Court ordered the Respondent to show cause by June 6, 2006, why the Respondent and his client should not be required to pay Westar's costs and fees. The Respondent failed to respond to the Court's show cause order.

"24.  Thereafter, the Court granted Westar's request that the Respondent and his client be required to pay $842.21 in attorneys fees. The Court ordered the Respondent and his client to pay Westar's attorneys fees by June 22, 2006. The Respondent failed to pay Westar's attorneys fees by June 22, 2006. Eventually, on November 14, 2006, the Respondent paid Westar's attorneys fees.

*"Motion to Dismiss*

"25.  On May 22, 2006, Westar filed a motion to dismiss or, in the alternative, to extend the deadline to take Plaintiff's deposition. Additionally, Westar filed a memorandum in support of its motion. In its memorandum, Westar stated:

'20.  Defendant's Counsel has on multiple occasions attempted to schedule Plaintiff's deposition. Plaintiff has failed to provide dates as requested by Defendant's counsel, which prompted Defendant's counsel on May 2, 2006 to file a Notice to Take Deposition. Plaintiff's deposition was noticed for May 24, 2006 but Defendant has not been able to confirm Plaintiff's availability or whether it will have responses to Defendant's discovery requests by that time. Defendant's counsel and its representative will need to travel from Wichita and Topeka respectively to attend Plaintiff's deposition in Kansas City. Given Plaintiff's repeated failures to prosecute this case and failure to respond to Defendant's inquiries regarding Plaintiff's availability, Defendant has cancelled the deposition pending resolution of this motion to avoid further wasted time and expense in this case.

'21.  On May 19, 2006, counsel for Defendant again attempted to reach Plaintiff's counsel regarding the discovery responses and the deposition but was unable to reach him by phone. Defendant's counsel left a voicemail message and sent an e-mail inquiring again regarding the status of discovery responses and the deposition of Plaintiff, advising that the deposition could not proceed without discovery responses. Defendant's counsel also inquired whether Plaintiff was "intending to pursue this case at all." As of the date of filing this motion, Plaintiff has failed to respond to Defendant's inquiries.

'22. Plaintiff has not issued any written discovery or made any attempts to schedule depositions in this case and is beyond the time to do so given the discovery deadline of June 2, 2006.

'23. Defendant has expended considerable time and money in complying with the various deadlines and requirements of the Court and in attempting to obtain information from Plaintiff and third party sources to defend this case.

'24. Plaintiff's counsel's delays and failures to comply with various court orders and failures to respond to Defense counsel has caused unnecessary time and wasted expense in this litigation.'

"26. On June 14, 2006, the Respondent filed a motion for extension of time to respond to Westar's motion to dismiss. The Respondent detailed personal family problems that he suffered during that time.

"27. The Court granted the Respondent's motion and extended the Respondent's time to file a response to Westar's motion to dismiss to July 5, 2006.

"28. On July 5, 2006, the Respondent filed a response to Westar's motion to dismiss.

"29. The Court denied Westar's motion to dismiss and, at the time of the disciplinary hearing, the case was scheduled for trial."

At the time that the hearing panel issued its final hearing report in this matter, the Sunderman litigation was still pending in federal district court. Since that time, the court has granted summary judgment in favor of Westar. See *Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269 (D. Kan. 2007). Dennis indicated during oral argument before this court that the Sunderman litigation is currently being appealed to the Tenth Circuit.

The Francis Litigation

In February 2005, the respondent filed a lawsuit in the United States District Court for the District of Kansas on behalf of Meredith Francis against Sprint, alleging that Francis was terminated from her employment with Sprint in violation of the Family Medical Leave Act (FMLA). Sprint was represented in the action by Jeannie DeVeney. The case was assigned to District Judge Kathryn H. Vratil and referred to Magistrate Judge David J. Waxse. After the case was eventually dismissed in 2006, Judge Vratil filed a disciplinary complaint against the respondent for his representation in that matter. The hearing panel summarized the respondent's conduct during the Francis litigation as follows:

"31. On February 7, 2005, Sprint filed a motion for sanctions under Fed. R. Civ. P[roc.]. 11(b)(3), asserting that the case was frivolous and that the Respondent had failed to conduct a reasonable investigation prior to signing and filing the complaint. According to Sprint, Ms. Francis was not terminated in retaliation for filing a claim under the Family and Medical Leave Act. Sprint eliminated the center where Ms. Francis worked and relocated the entire group employing Ms. Francis from Denver, Colorado, to Kennesaw, Georgia. Ms. Francis declined the opportunity to relocate. When Ms. Francis refused to relocate to Georgia, her position ended.

"The Court deferred ruling on the motion.

"32. On June 15, 2005, the Respondent filed a motion to stay the plaintiff's suit until Chief Judge John W. Lungstrum resolved a collective action in which the plaintiff alleged age discrimination. In response to the motion to stay, Sprint argued that the plaintiff's FMLA claim had nothing to do with an age discrimination claim. On September 2, 2005, Magistrate Judge David J. Waxse denied the motion to stay.

"33. On July 14, 2005, the Court entered an Initial Order Regarding Planning and Scheduling. In the order, the Court set a number of deadlines. Then, on September 21, 2005, the Court entered a second Initial Order Regarding Planning and Scheduling, which appears similar to the first order, but with later dates. In the Order, the Court directed the parties as well as their attorneys to appear at a scheduling conference by telephone on October 26, 2005. The plaintiff did not appear at the scheduling conference by telephone.

### "*Scheduling Order*

"34. At the scheduling conference on October 26, 2005, the Court set a number of deadlines. First, the Respondent was ordered to provide a settlement proposal by November 4, 2005. The Respondent never provided the settlement proposal.

"35. The Court ordered the parties to provide confidential settlement reports to the Court by November 23, 2005. The Respondent failed to provide a confidential settlement report as required. As a result, on December 12, 2005, the Court issued an order to show cause why sanctions should not be imposed for failing to provide the confidential settlement report as ordered.

"36. The scheduling order required the parties to exchange Fed. R. Civ. P[roc.]. 26 disclosures by November 4, 2005. By agreement, the parties agreed to extend the disclosure exchange to November 11, 2005. On November 11, 2005, Sprint served its disclosures and documents. The Respondent failed to provide Sprint with its disclosures and documents. On December 12, 2005, the Respondent filed Certificate indicating that the disclosures had been served. On December 16, 2005, Sprint received the Respondent's disclosures. However, the Respondent failed to produce any documents with the disclosures.

"37. On October 28, 2005, Sprint served discovery requests on the Respondent. The responses to the discovery requests were due on December 2, 2005.

The Respondent failed to provide the responses to the discovery requests by December 2, 2005. On December 12, 2005, the Respondent filed a Certificate, indicating that he served the responses to the discovery requests. On December 16, 2005, Sprint received the Respondent's responses to the discovery requests. However, the interrogatory answers were not verified, the Respondent did not return the requested authorizations, and the responses were deficient in other respects.

"38.  Counsel for Sprint contacted the Respondent regarding the deficient disclosures and the deficient discovery responses. The Respondent agreed to supplement his responses by January 6, 2006. The Respondent did not supplement the disclosures or the discovery responses. Because the Respondent did not supplement the disclosures or the discovery responses, Sprint filed a motion to compel. Included in that motion was a request that the case be dismissed. In the motion, counsel for Sprint alleged that '[p]laintiff has ignored and continues to ignore virtually every applicable rule in the Federal Rules of Civil Procedure, the Local Rules, and the Orders of this Court.' The Respondent failed to respond to the motion to compel.

"39.  Because the Respondent failed to respond to Sprint's motion to compel, on February 15, 2006, the Court granted the Motion. In [its] order, the Court stated:

'As Plaintiff has not filed any responses to the Motion to Compel, the Court cannot find that any of the stated exceptions apply here. The Court notes that it is not required to hold a hearing before imposing these sanctions. Although the Court must afford the party an "opportunity to be hear[d]," that Court may consider the issue of sanctions "on written submissions." Here, Defendant expressly requested in its motion that it be awarded its expenses and attorney fees. Although Plaintiff did not file a brief in response to her request for sanctions, she had the opportunity to do so. The Court therefore finds that Plaintiff has had sufficient "opportunity to be heard" within the meaning of Fed. R. Civ. P[roc.]. 37(a)(4).

'In light of the above, the Court will grant Defendant'[s] request for expenses and fees.'

The Court also directed the Respondent to provide the requested information. Specifically, the Court ordered the Respondent to cure the deficiencies in the disclosures and the discovery responses by February 28, 2006. The Respondent failed to provide the documentation as ordered.

"40.  Finally, the Court directed Sprint to forward an affidavit itemizing the reasonable attorney fees and expenses it incurred in connection with the motion to compel.

"41.  Thereafter, counsel for Sprint filed an affidavit, seeking $2,200.00 in attorneys fees associated with the motion to compel. The Respondent filed a response, arguing that counsel for Sprint's fees were not reasonable. The Court ordered the Respondent to pay $588.00 to counsel for Sprint in attorneys fees by June 6, 2006. The Respondent paid the $588.00 in sanctions.

*"Plaintiff's Deposition*

"42. On November 14, 2005, and November 18, 2005, Sprint contacted the Respondent and requested possible dates to take Ms. Francis' deposition. The Respondent failed to respond to either request.

"43. On November 21, 2005, Sprint filed a notice to take Ms. Francis' deposition on December 14, 2005. The Respondent failed to contact Sprint after receiving the notice to take Ms. Francis' deposition.

"44. On December 6, 2005, counsel for Sprint wrote to the Respondent and informed him that she would seek fees and costs if Ms. Francis did not appear for her deposition. On December 7, 2005, the Respondent sent an electronic mail message to counsel for Sprint and indicated that he would be in contact with her on December 9, 2005, to discuss these matters. The Respondent failed to contact counsel for Sprint on December 9, 2005, as promised.

"45. Thereafter, on December 12, 2005, the Respondent filed a motion for a protective order, postponing Ms. Francis' deposition due to her inability to pay for the travel expenses from Colorado where she resides.

"46. On December 13, 2005, the Court denied the Respondent's motion because he failed to certify to the Court that he attempted to confer with opposing counsel in good faith. Despite the denial of the motion, neither the Respondent nor Ms. Francis appeared at the deposition.

"47. On January 11, 2006, Sprint served a second notice of deposition, scheduling Ms. Francis' deposition for January 27, 2006.

"48. Ms. Francis and the Respondent appeared at the deposition on January 27, 2006. During the deposition, the Respondent's office staff sent 168 pages of documents to counsel for Sprint by electronic mail. During her deposition, Ms. Francis testified that she has calendars and notes related to the litigation. However, the Respondent had not provided the calendars and notes to counsel for Sprint. Finally, also during her testimony, Ms. Francis referred to documents that had not been provided to support her position. Because counsel for Sprint had not been provided with relevant documents in response to the requests for discovery prior to the deposition, counsel for Sprint was not able to conclude the deposition. Thus, the deposition was adjourned to allow the Respondent time to provide additional documents and for counsel for Sprint time to review the documents.

"49. On February 23, 2006, Sprint served a third notice of deposition of Ms. Francis, scheduling the continued deposition for March 9, 2006.

"50. Prior to the scheduled deposition, the Respondent confirmed that Ms. Francis would appear at the deposition. However, the morning of the deposition, the Respondent contacted counsel for Sprint and indicated that Ms. Francis was not sufficiently emotionally stable to appear for her deposition. Ms. Francis did not appear for the deposition.

*"Motion to Dismiss*

"51. On December 14, 2005, Sprint filed a motion to dismiss. Counsel for Sprint based the motion on the Respondent's failure to comply with the deadlines

in the scheduling order and the Respondent's failure to communicate regarding the initial deposition scheduled. Thereafter, on March 9, 2006, the Court denied Sprint's motion to dismiss. However, in the Memorandum Order the Court stated that the Respondent 'has consistently missed deadlines in this case and is partly to blame for plaintiff's failure to appear.' Additionally, the Court stated, in footnote 4, the following:

'On October 26, 2005, plaintiff did not appear at the scheduling conference. Plaintiff did not provide a settlement proposal which was due on November 4, 2005. Plaintiff served her initial disclosures and related documents on December 12, 2005, more than one month after they were due. Plaintiff responded to discovery requests on December 12, 2005, some ten days late. On January 9, 2006, defendant filed a motion to compel plaintiff's responses to certain discovery requests, but plaintiff did not file an opposition brief.'

In conclusion the Court stated:

'In the circumstances of this case, the Court finds that dismissal is not an appropriate sanction at this time. Plaintiff and her counsel certainly should now be aware that dismissal is a likely sanction for further noncompliance with discovery and Court orders. The Court cautions plaintiff and her counsel that it will not tolerate future missed deadlines. Any future breach of plaintiff's duties to the Court may result in sanctions including but not limited to (1) an order which requires plaintiff to pay reasonable attorneys' fees which defendant incurs as a result of her actions; (2) an order which establishes certain matters and/or facts for purposes of the action; (3) an order which disallows plaintiff to support or oppose designated claims or defenses, or prohibits plaintiff from introducing designated witnesses or matters into evidence; (4) an order which strikes pleadings or parts thereof, stays future proceedings, dismisses the action with prejudice or enters judgment in favor of defendant; and (5) an order which holds plaintiff in contempt of court.'

### "Status Conference and Order

"52. On February 8, 2006, the Court held a status teleconference. During the teleconference, the Court took up two motions filed by Sprint—a motion for extension of time to designate experts and a motion to modify the scheduling order. The Court granted the motions and, on February 15, 2006, issued an order with certain deadlines. On February 28, 2006, the Respondent filed a response to the Order.

"Thereafter, on March 3, 2006, Sprint filed another motion for sanctions against the Respondent. This motion for sanctions was filed because the Respondent failed to comply with the Court's February 15, 2006, Order. The Court denied Sprint's motion for sanctions on procedural grounds.

### "Second Motion to Dismiss

"53. On March 21, 2006, Sprint filed a second motion to dismiss. The Respondent failed to respond to the motion. On May 15, 2006, the Court dismissed

the case with prejudice. The Courts' Memorandum and Order contained the following language:

'The Court finds that dismissal is warranted under Rule 41(b) of the Federal Rules of Civil Procedure. The Court previously outlined the factors which it must consider before dismissing a case with prejudice. Those factors now clearly warrant dismissal. . . . Plaintiff chose not to file a response to defendant's motion to dismiss. In addition, plaintiff has employed numerous delay strategies in this case as outlined in defendant's memorandum. Accordingly, the Court concludes that dismissal is an appropriate sanction.'

Further, the Court ordered . . . Ms. Francis to pay counsel for Sprint for the costs of fees associated with defending the case from March 9, 2006, through the filing of its second motion to dismiss. Finally, the Court ordered the Respondent to show cause why he should not be held personally liable for the sanctions ordered in the case.

"54. On May 31, 2006, the Respondent filed a response to the order to show cause and a motion to file exhibits under seal. The Court granted the Respondent's request to file exhibits under seal. However, the Respondent failed to file exhibits under seal.

"55. On August 11, 2006, the Court ordered the Respondent to pay $1,108.75 in attorneys fees and the Plaintiff to pay $2,119.59 in costs. In its order, the Court stated:

'(1) the Court hereby grants Defendant's Motion for Fees and Costs and orders Plaintiff's counsel to pay $1,108.75 in fees and costs to Defendant pursuant to the Court's May 15, 2006 Memorandum and Order. The sanctions are imposed against the law firm of Plaintiff's counsel, rather than Plaintiff herself, as the Court is not persuaded that Plaintiff was responsible for the sanctionable conduct; and

'(2) the Court hereby grants Defendant's request for taxation of costs to Plaintiff in the amount of $2,119.59 and hereby directs the Clerk of the Court to tax such amount as costs.' "

The hearing panel also found that the Francis litigation cost Sprint $41,207.95 in litigation expenses.

## Federal and Kansas Disciplinary Actions

Stephanie Scheck, opposing counsel in the Sunderman litigation and the complainant as to respondent's representation in that matter, filed a complaint with Kansas' office of the Disciplinary Administrator on May 26, 2006. Judge Vratil filed a similar complaint regarding the respondent's actions in the Francis litigation on January 19, 2007. The Disciplinary Administrator filed a formal com-

plaint regarding the respondent's representation in both cases on April 13, 2007.

In addition to these state disciplinary proceedings, the respondent's actions are also being considered by a disciplinary panel of the Kansas federal court. In January 2007, Judge Vratil and Judge O'Hara filed complaints against the respondent regarding the Sunderman and Francis litigations and one other pending case with the disciplinary panel of the United States District Court for the District of Kansas. The federal panel found on January 24, 2007 that "the facts alleged in the instant complaints, if true, would justify the imposition of disciplinary sanctions."

After an additional hearing on March 6, 2007, the federal disciplinary panel determined that it should stay the disciplinary proceedings in federal court until this court issues its decision in the current disciplinary case. The federal disciplinary panel further ordered that as of March 20, 2007, the respondent was required to have co-counsel in any case where he appeared in Kansas federal district court.

## Hearing Panel's Conclusions of Law and Recommended Discipline

Hearings were held in this disciplinary matter on May 17, 2007, July 18, 2007, and July 24, 2007. The hearing panel issued its final hearing report in this case on November 21, 2007. After setting forth its factual summary, the panel determined that the respondent's conduct in conjunction with the Sunderman and Francis litigations violated KRPC 1.1 (competence) (2007 Kan. Ct. R. Annot. 384), KRPC 1.3 (diligence) (2007 Kan. Ct. R. Annot. 398), KRPC 1.16(a) (declining or terminating representation) (2007 Kan. Ct. R. Annot. 487), KRPC 3.1 (meritorious claims and contentions) (2007 Kan. Ct. R. Annot. 500), KRPC 3.2 (expediting litigation) (2007 Kan. Ct. R. Annot. 503), KRPC 3.3 (candor toward the tribunal) (2007 Kan. Ct. R. Annot. 508), and KRPC 8.4(d) (conduct prejudicial to the administration of justice) (2007 Kan. Ct. R. Annot. 559).

In determining which discipline to recommend for these violations, the panel made the following findings:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his clients to provide competent and diligent representation. The Respondent violated his duty to the legal system to comply with court orders. The Respondent violated his duty to the profession to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal system.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. On October 29, 1999, the Kansas Supreme Court indefinitely suspended the Respondent's license to practice law in the State of Kansas for an indefinite period of time for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 3.3, KRPC 8.4, and Kan. Sup. Ct. R. 207. Also, on March 22, 1999, the United States Court of Appeals for the Tenth Judicial Circuit disbarred the Respondent from the practice of law. *In re Dennis*, No. 99-802 (10th Cir. Mar. 22, 1999). Finally, on March 13, 2002, United States District Court for the District of Kansas issued an order placing the Respondent on probation for one year.

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct when he repeatedly failed to respond to motions, repeatedly failed to comply with court orders, and he repeatedly failed to properly communicate with opposing counsel.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.16(a)(1), KRPC 3.1, KRPC 3.2, KRPC 3.3(a)(1), and KRPC 8.4(d). As such, the Respondent committed multiple offenses.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent refused to acknowledge the wrongful nature of his conduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1985. Although he was indefinitely suspended in 1999, the Respondent was authorized to continue to practice law in federal court. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of 22 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommen-

dation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. The Respondent suffered personal family problems during the time he represented Mr. Sunderman. The Respondent detailed the problems in a motion for extension of time. The Hearing Panel concludes that the Respondent's personal family problems contributed to the delay in the Sunderman case.

"Imposition of Other Penalties or Sanctions. The Court imposed sanctions on the Respondent in the Sunderman and Francis cases. The Respondent has paid the sanctions.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.' Standard 6.22."

The Disciplinary Administrator recommended that Dennis' license to practice law in this state again be indefinitely suspended, as such action would require the respondent to wait 3 additional years before he could apply for reinstatement.

The hearing panel noted that because the respondent denied that his conduct violated any rule, he implicitly requested that the case be dismissed. The respondent alternatively requested that the hearing panel recommend that he be placed on probation, that he be directed to apply for reinstatement, or that he be subject to published censure. The respondent made the following statements to the hearing panel regarding his recommendations for discipline:

" 'I simply don't believe that a further indefinite suspension or a further suspension in any—of any duration is appropriate at this time. But I do agree that because I represent a unique situation and, certainly, the fact that I have been suspended was one of the things that prompted Judge Vratil and Stephanie Scheck to institute their complaints, I'm ready, willing and able to proceed at this point with an application for reinstatement. And I think it would be entirely appropriate for this Panel to—to make a recommendation or to make an order that I do that within a certain period of time and—and let the chips fall where they may. As I

understand it, before I could be reinstated, there would have to be a hearing to determine whether I'm competent to resume practice before the Courts of the State of Kansas, and I'm fully prepared to make that step. I've applied twice to do that, and I'm ready to do it.

" 'So rather than follow the recommendation of the Disciplinary Administrator on further suspension, essentially, keeping me from resuming practice for another three years, I ask that at the very minimum that that be shortened or that he—that the Panel impose discipline along the lines of a public censure, something of that nature, because I've already been punished by the Federal Courts for the conduct that—that has been alleged.' "

After considering all of the arguments, the panel unanimously recommended that Dennis be indefinitely suspended from the practice of law in Kansas.

DISCUSSION

The respondent filed exceptions to the final hearing report, claiming that the hearing panel lacked subject matter jurisdiction over his conduct in federal district court, that his conduct did not establish a violation of any of the rules cited by the panel, and that indefinite suspension is not an appropriate discipline for his actions.

After the respondent filed his brief before this court explaining these exceptions, an employee from the office of the Clerk of the Appellate Courts sent the respondent a letter regarding several deficiencies in the brief. In particular, the letter stated that the respondent's brief did not satisfy the requirements of Supreme Court Rule 6.02(d) (2007 Kan. Ct. R. Annot. 37) because the brief did not contain a statement of facts and did not cite to specific points in the record. The respondent was given 15 days to correct these deficiencies. Although this correspondence was sent to the address noted by the respondent on his brief, the letter was returned unopened to the Clerk's office as undeliverable.

Supreme Court Rule 6.02(d) provides that an appellant's brief before this court "shall contain"

"[a] factual statement of the case, *i.e.,* a concise but complete statement, without argument, of all the facts of the case material to the determination of the question or questions presented for appellate decision. The facts stated therein shall be keyed to the record on appeal by volume and page number so as to make verifi-

cation reasonably convenient. *Any material statement made without such a reference may be presumed to be without support in the record."* (Emphasis added.) (2007 Kan. Ct. R. Annot. 37.)

Supreme Court Rule 6.02(e) further requires that the argument section of briefs contain "a reference to the specific location in the record on appeal where the issue was raised and ruled upon." (2007 Kan. Ct. R. Annot. 37.)

We note that the respondent's brief contains neither a statement of facts nor specific citations to the record on appeal. The few citations to the record that are provided throughout the brief are not keyed to the volume and page number. We have previously found that where an appellant's contentions were made without being keyed to the record on appeal, we will presume that those contentions are not supported by the record. See *State v. Drach*, 268 Kan. 636, 638, 1 P.3d 864 (2000); *In re Care & Treatment of Hay*, 263 Kan. 822, 835, 953 P.2d 666 (1998). With these deficiencies in mind, we consider the three exceptions raised by the respondent in this appeal.

(1) Subject Matter Jurisdiction

The respondent argues that the hearing panel did not have subject matter jurisdiction to hear his disciplinary case because it involved conduct during his practice in the federal district court, not in Kansas state courts. The respondent asserts that he has not practiced law in Kansas since he was indefinitely suspended in 1999, so he should not be subject to additional discipline in this state.

The question as to whether the hearing panel—or, by extension, this court—has jurisdiction to hear a case is a question of law over which this court has unlimited review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006). The hearing panel's final hearing report indicated that there was no objection to the panel's jurisdiction to hear the case. The respondent takes issue with this statement on appeal, claiming he did object to the panel's subject matter jurisdiction when he argued that all of the conduct at issue took place in federal court. Whatever the resolution of this dispute, we may consider the respondent's jurisdictional challenge because the issue of subject matter jurisdiction may be

raised at any time. See *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007).

That said, this court rejected the exact argument raised by the respondent in this case in *In re Arnold*, 274 Kan. 761, 771-72, 56 P.3d 259 (2002), where we explained:

"KRPC 8.5 states: 'A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere.'

. . . .

"There is no conflict between state and federal jurisdiction. Arnold's actions were not proper in federal court just as they were not proper in state court. We retain the power to discipline attorneys for conduct committed outside of and beyond our Kansas courts."

The respondent argues that there is a potential conflict in this case because the disciplinary panel for the United States District Court for the District of Kansas may impose a different discipline from that imposed in this jurisdiction. This argument is without merit. The comments to KRPC 8.5 state that "[i]f the rules of professional conduct [of Kansas and another jurisdiction] differ, principles of conflict of laws may apply." KRPC 8.5, comment (2007 Kan. Ct. R. Annot. 579). The respondent has not demonstrated that the federal court's rules of professional conduct differ from those in Kansas or that his conduct would not have been subject to discipline in the federal district court. In fact, the federal disciplinary panel has stayed its proceedings against the respondent pending the outcome of these disciplinary proceedings.

Because the respondent is an attorney licensed to practice in this state, we conclude that the hearing panel had subject matter jurisdiction to consider the disciplinary action against him pursuant to KRPC 8.5.

(2) Conclusions of Law that Respondent's Conduct Violated the KRPC

The respondent also argues that the hearing panel's conclusions of law that he violated the various provisions of the KRPC are not supported by the evidence. The hearing panel found that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.16(a) (declining or terminating representation), KRPC 3.1

(meritorious claims and contentions), KRPC 3.2 (expediting litigation), KRPC 3.3 (candor toward the tribunal), and KRPC 8.4(d) (conduct prejudicial to the administration of justice). The respondent contends that the record does not support any of these violations.

### Standard of Review

In disciplinary proceedings, this court "considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. [Citations omitted.]" *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003); *In re Boone*, 269 Kan. 484, 498, 7 P.3d 270 (2000). We have recently clarified that clear and convincing evidence is evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." *In re B.D.-Y.*, 286 Kan. 686, 697, 187 P.3d 594 (2008). Although *B.D.-Y.* dealt specifically with the quantum of proof applicable to child in need of care cases, we indicated that our definition of clear and convincing evidence in that case was applicable to all areas of law where the factfinder is required to make a similar determination. 286 Kan. at 697-98. Thus, the definition applies in cases concerning attorney discipline.

This court gives the final hearing report in a discipline case the same level of deference as we would a special verdict by a jury or the findings of a district court during a bench trial. *Lober*, 276 Kan. at 636. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and evaluate their demeanor. Therefore, we do not reweigh the evidence or pass on credibility of witnesses. *In re Rumsey*, 276 Kan. 65, 76, 71 P.3d 1150 (2003). Rather, we will generally affirm the panel's findings if we determine that a rational factfinder could have found that it was highly probable that the respondent's conduct violated the applicable provisions of the KRPC. See *B.D.-Y.*, 286 Kan. at 705-06.

*KRPC 1.1 (Competence)*

Under KRPC 1.1, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." (2007 Kan. Ct. R. Annot. 384.) The hearing panel concluded that Dennis "failed to competently represent Mr. Sunderman and Ms. Francis when he failed to thoroughly prepare for their representations."

The respondent argues that he presented evidence before the hearing panel that he had successfully handled numerous other cases before the federal district court. He also points out that Judge O'Hara testified that he saw no "pattern" of incompetent behavior in the manner that the respondent had handled other cases and that he did not believe that the respondent's conduct was generally "sliding downhill."

The respondent similarly argues that his conduct in the Sunderman and Francis litigations was "excused, at least [in] part, by extenuating circumstances," and that if his representation was in any way incompetent, this shortcoming was sufficiently addressed by the discovery sanctions imposed by the federal district court.

The Disciplinary Administrator responds that the Sunderman and Francis matters involved several instances where the respondent provided incompetent representation, including the following:

In the Sunderman litigation, the respondent

- failed to respond to Westar's motion for partial summary judgment;
- filed his confidential settlement report 2 months after it was due and after two court orders were issued instructing him to file the report;
- filed several discovery responses past their due date;
- failed to provide documents to opposing counsel after he had promised to do so; and
- lost discovery responses and falsely certified to the court that he had sent the documents to opposing counsel.

In Francis' lawsuit against Sprint, the respondent

- failed to ensure his client's presence at the scheduling conference when presence was required by Judge Waxse;
- failed to provide a confidential settlement report, as required by the scheduling order;
- failed to communicate with opposing counsel regarding the necessity to reschedule his client's deposition;
- failed to include documents to verify the disclosures in his interrogatories;
- failed to respond to Sprint's second motion to dismiss; and
- failed to provide documents under seal to excuse his conduct regarding the second motion to dismiss after specifically requesting the court to allow him to file the documents in such a fashion.

Comment 5 to KRPC 1.1 states that "[c]ompetent handling of a particular matter includes . . . adequate preparation." (2007 Kan. Ct. R. Annot. 384.) The repeated failure to timely respond to discovery requests, court orders, and dispositive motions is clear evidence of incompetence. The respondent's argument that he provided competent representation in *other* matters is irrelevant to the determination that he failed to do so in the matters before the panel and this court. We conclude that based on the record before us, a rational factfinder could determine that there is clear and convincing evidence that Dennis did not provide competent representation in the Sunderman and Francis matters.

*KRPC 1.3 (Diligence)*

KRPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." (2007 Kan. Ct. R. Annot. 398.) The hearing panel found that Dennis failed to provide diligent representation to Sunderman and Francis "when he failed to timely respond to motions, when he failed to timely comply with court orders, and when he failed to timely provide responses to discovery."

The respondent contends that his actions in the two federal cases did not violate KRPC 1.3. In particular, the respondent argues with regard to the Sunderman litigation that Stephanie Scheck, who filed the disciplinary complaint in that matter, conceded during

her testimony before the hearing panel that the respondent eventually did provide complete discovery responses before the plaintiff's deposition. The respondent further asserts that the vast majority of discovery responses were provided before they were due and that the case proceeded without additional delays after Sunderman's deposition. As to the Francis matter, the respondent argues that many of the delays in that case were "not the responsibility of Respondent, but rather were attributable to the non-cooperation and non-responsiveness of the client."

The Disciplinary Administrator points to the following instances of delay during the two federal cases at issue as clear and convincing evidence of a violation of KRPC 1.3:

In the Sunderman case, the respondent

- filed the confidential settlement report, which was due on February 24, 2006, on April 21, 2006, after the judge issued an order to show cause why he should not be sanctioned;
- failed to provide disclosures under Rule 26, which were due on January 27, 2006, until February 26, 2006;
- failed to provide responses to Westar's discovery requests until September 22, 2006, after Westar's counsel filed a motion to compel, although the original discovery deadline was June 2, 2006; and
- was ordered by the court to pay $842.21 to Westar's counsel to compensate for the preparation of the motion to compel.

In addition, Judge O'Hara testified at the disciplinary hearing that as a result of the respondent's failure to respond to discovery, the trial that had originally been scheduled for February 2007 had to be rescheduled for November 2007.

In the Francis matter, the respondent

- failed to file a settlement proposal and a confidential settlement report by the date it was due;
- filed initial disclosures 1 month after the due date and responded to other discovery requests 10 days late; and
- did not provide the documents required for the deposition of his client in a timely fashion, forcing the parties to move the deposition from January 27, 2006 to March 9, 2006.

Both opposing counsel and the presiding judge in the Francis litigation testified during the disciplinary hearing as to the respondent's consistent lack of promptness in that case. Opposing counsel testified that she had difficulty explaining to her client why there were so many delays in the case. Judge Vratil, in her order dismissing the case, stated that the respondent had used "numerous delay strategies." Judge Vratil also testified at the hearing that the number of delays in the Francis litigation was a serious problem.

The Disciplinary Administrator correctly points out that a rational hearing panel could find that the respondent's consistent failure to comply with deadlines is clear and convincing evidence that he failed to provide diligent representation in this case. It does not matter that the respondent *eventually* provided the discovery responses in the Sunderman matter, for example, before his client's deposition; the fact remains that he did not respond in a timely fashion, which caused repeated delays in the case. Likewise, the respondent's claim that he was not responsible for the late filings in the Francis matter since these delays were caused by his client is unconvincing, as he could have informed the court of his difficulty or withdrawn from the case.

We have previously held that the failure to file a journal entry is a violation of KRPC 1.3. See *In re Black*, 249 Kan. 211, 814 P.2d 447 (1991). The respondent's repeated failure in this case to comply with numerous deadlines and court orders supports the panel's conclusion that the respondent failed to act with reasonable diligence and promptness.

In his brief, Dennis claims that he should not be subject to discipline for a violation of KRPC 1.3 because other attorneys have been sanctioned for similar actions in federal court and no disciplinary action was taken in those cases. We note that this claim is really an argument for mitigation, not an argument that the respondent did not violate the diligence requirement, as the determinative question is whether the respondent provided prompt and diligent representation—a determination that does not depend on the existence or nonexistence of sanctions in a particular case. Moreover, the hearing panel did consider the sanctions against the respondent in its final hearing report as a mitigating circumstance.

The respondent's claim that this somehow should prevent the court from finding a violation of KRPC 1.3 is without merit.

Our review of the record leads us to conclude that the hearing panel's conclusion that the respondent violated KRPC 1.3 was supported by clear and convincing evidence.

*KRPC 1.16(a) (Declining or Terminating Representation)*

The hearing panel found that Dennis' failure to withdraw from representing his client in the Francis matter violated KRPC 1.16(a)(1), which states: "Except [when ordered to do so by a tribunal], a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation will result in violation of the rules of professional conduct or other law." (2007 Kan. Ct. R. Annot. 487.)

The hearing panel noted that the respondent testified that the reason for many of the problems in the Francis litigation was that his client refused to provide him with the information he needed to represent her. The panel concluded that "when it became clear to the Respondent that Ms. Francis was not going to provide him with the necessary information, KRPC 1.16(a)(1) required the Respondent to withdraw from her representation." The panel also found the respondent's argument that his agreement to represent Francis in another proceeding prevented him from withdrawing as her counsel in the FMLA action against Sprint to be unconvincing.

Dennis contends that he acted reasonably under the circumstances to get his client to cooperate with him and comply with the discovery orders. The respondent points to his testimony that he believed that his withdrawal from the Francis matter would be problematic in light of his representation in another action against Sprint. The respondent argues that at "worst," the client's lack of cooperation created an "ethical dilemma" to be considered by the respondent and his firm, not a disciplinary action.

At the hearing, the respondent testified that he requested numerous documents from his client during the course of the Francis litigation, but she did not provide them. He states that he also sought permission from his client to withdraw or to dismiss the

case, but his client did not respond. The respondent acknowledged in his testimony during the disciplinary hearings that he should have withdrawn his representation on March 9, 2006, when his client did not appear at the scheduled deposition. In fact, the respondent wrote in his response to the court's show cause order that "[i]n retrospect, counsel should have taken steps to withdraw as her counsel long ago."

The only justification that the respondent provides for his failure to withdraw as counsel in the Francis matter is that he was also representing the client in another matter against Sprint. The rules, however, do not include such an exception. In fact, Comment 2 to KRPC 1.16 states that "[a] lawyer ordinarily *must* decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law." (Emphasis added.) (2007 Kan. Ct. R. Annot. 488.)

The respondent acknowledged before both the district court and the hearing panel that his continued representation of his client in the Francis litigation led to numerous delays and his failure to comply with or respond to numerous court orders. Under KRPC 1.16, the respondent should have withdrawn as counsel. The hearing panel's finding is supported by clear and convincing evidence.

*KRPC 3.1 (Meritorious Claims and Contentions)*

KRPC 3.1 states in relevant part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." (2007 Kan. Ct. R. Annot. 500.) Comment 2 to KRPC 3.1 states that lawyers are required to "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." (2007 Kan. Ct. R. Annot. 501.)

The panel concluded that Dennis' decision to file the Francis litigation violated KRPC 3.1 because the case was "frivolous." The panel noted that the reason for Francis' termination was that she

declined an offer to transfer to a new location when her department was eliminated, not due to her claims under the FMLA.

The respondent argues that the panel's conclusion that the Francis matter was "frivolous" was inappropriate because the federal district court did not impose sanctions under Rule 11 of the Federal Rules of Civil Procedure. The respondent acknowledges that the defendant did not pursue an order of sanctions under Rule 11 in the Francis litigation. However, he contends that the hearing panel's conclusion that the matter was frivolous required the application of a federal standard and, by extension, a usurpation of federal jurisdiction.

Opposing counsel in the Francis matter testified that she had filed a motion for sanctions pursuant to Rule 11 and accompanying memorandum early in the litigation, but the court declined to rule on the motion, saying it was too early to determine whether the case was frivolous. The motion stated that Sprint did not retaliate against the respondent's client for taking FMLA leave, but merely eliminated the entire office where she worked and offered her a position in another city. The client refused to relocate and was terminated as a result. The memorandum noted that even the most cursory investigation of the facts would have demonstrated that there was no retaliation. Opposing counsel testified that she sent a copy of this motion and memorandum to the respondent pursuant to the federal rules, and after he failed to respond within 21 days, filed the motion with the court.

The Francis litigation was eventually dismissed due to the respondent's continued failure to comply with court orders and discovery deadlines without the court ruling on the Rule 11 motion.

Contrary to the respondent's claims on appeal, the fact that the federal court did not sanction his conduct under Rule 11 does not prevent this court from finding that clear and convincing evidence supported the hearing panel's conclusion that the respondent filed a frivolous lawsuit. Instead, the question is whether a rational factfinder could determine, based on the findings of fact discussed in this opinion, that it was highly probable that the respondent had filed a frivolous lawsuit in violation of KRPC 3.1.

The findings of fact pertaining to the Francis litigation demonstrate that Francis' FMLA claims were without merit from the beginning, and there was never any indication that further investigation would lead to a meritorious case. It was the respondent's duty, under KRPC 3.1, to familiarize himself with the facts and to refrain from filing if the case was frivolous. He did not do so. We hold that the panel's conclusion that the respondent violated KRPC 3.1 is supported by clear and convincing evidence.

### KRPC 3.2 (Expediting Litigation)

Similar to KRPC 1.3 (diligence), KRPC 3.2 states that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." (2007 Kan. Ct. R. Annot. 503.) The hearing panel found that Dennis failed to expedite the litigation initiated on behalf of Sunderman and Francis, causing "extreme delay in both cases."

Dennis argues that the hearing panel's determination that he failed to make "reasonable efforts to expedite litigation" was not supported by clear and convincing evidence, as "some of the delays were excusable and clearly resulted despite the 'reasonable efforts' " by the respondent. The respondent contends that he made "numerous attempts" to obtain his client's compliance with the discovery requests in the Francis matter. He further stated with regard to the Sunderman litigation that "372 pages of requested documents were produced even before a written response to defendant's document request was due and that complete interrogatory answers were provided before plaintiff's deposition."

The delays that resulted from the respondent's representation in these two matters is set forth in detail in our previous discussion of KRPC 1.3. In the Sunderman matter, although Judge Murgia denied Westar's motion to dismiss, he stated that the "plaintiff has failed repeatedly to respond promptly to defendant's motions and court orders." Judge Vratil wrote in her order dismissing the Francis litigation that the respondent had utilized "numerous delay strategies."

The comment to KRPC 3.2 provides:

"Dilatory practices bring the administration of justice into disrepute. Delay should not be indulged merely for the convenience of the advocates, or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client." (2007 Kan. Ct. R. Annot. 503.)

The panel's conclusion that the numerous delay tactics employed by the respondent in these two cases violated KRPC 3.2 is supported by clear and convincing evidence.

*KRPC 3.3(a) (Candor Toward the Tribunal)*

The panel concluded that Dennis violated KRPC 3.3(a)(1) when he "falsely certified that he served discovery responses on counsel for Westar on April 26, 2006" during the Sunderman litigation. This rule states that a lawyer "shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." KRPC 3.3(a)(1) (2007 Kan. Ct. R. Annot. 508).

The respondent asserts that there is no evidence that he *"intentionally* misled" the court in the Sunderman matter regarding the certificate of service at issue, stating that his conduct was negligent at worst.

The evidence surrounding Dennis' allegedly false certification is as follows: The respondent represented that he mailed his responses to Westar's interrogatories in the Sunderman case on April 26, 2006—over a month after these responses were due. At the disciplinary hearing, the respondent testified that he left the responses in an envelope for his staff to mail. He did not present any evidence to corroborate this testimony. He also stated at the hearing that he had made copies of the documents that he sent to opposing counsel, but he could not find the copies afterward; and that although he prepared the responses on his computer, he was not able to find the electronic copies either. When opposing counsel filed a motion to compel, indicating she never received the discovery responses, the respondent did not respond; at the hear-

ing, he indicated that his lack of response was due to personal embarrassment.

Despite this chain of events, the respondent certified to the court that he had served the discovery responses on opposing counsel on April 26, 2006.

In *In re Rumsey*, 276 Kan. 65, 76, 71 P.3d 1150 (2003), we explained that "[a]s the trier of fact, the Panel, like the jury or the judge in a bench trial, had the opportunity to observe the witnesses and evaluate their demeanor. When reviewing a jury's verdict, this court does not weigh the evidence or pass on the credibility of witnesses. [Citation omitted.]" The panel in this case determined, after hearing the testimony of the respondent and the other witnesses, that the respondent knowingly provided a false certification to the federal court that he had sent the discovery responses. This determination is supported by evidence in the record.

Moreover, even if the respondent did not originally intend to make a false certification to the court regarding the discovery responses, he should have corrected that certification when he realized that the responses were never actually sent to opposing counsel. KRPC 3.3(a)(1) also states that it is a violation for a lawyer to "fail to correct a false statement" to the court.

Considering the evidence in the record, a rational factfinder could conclude that it was highly probable that the respondent falsely certified that he had mailed the discovery responses to opposing counsel on April 26, 2006. Thus, the panel's conclusion that the respondent violated KRPC 3.3 is supported by the clear and convincing evidence.

*KRPC 8.4(d) (Conduct Prejudicial to the Administration of Justice)*

Finally, the hearing panel concluded that Dennis' representation in the Sunderman and Francis matters violated KRPC 8.4(d), which states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." (2007 Kan. Ct. R. Annot. 559.)

The hearing panel determined that the respondent violated this rule by "caus[ing] substantial delay in two federal cases by repeat-

edly failing to respond to motions, by repeatedly failing to comply with court orders, [and] by repeatedly failing to properly communicate with opposing counsel." The panel further found that "the Respondent's actions caused the limited resources of the federal court to be spent on matters unrelated to the merits of the case and . . . created unnecessary adversarial relationships with opposing counsel."

The respondent argues that this court's previous disciplinary cases indicate that in order for conduct to violate KRPC 8.4(d), there must be some proof of *intentional* conduct. He asserts that most violations of this rule involve criminal conduct or misappropriation of funds, neither of which took place in this case. He does not provide any support for these assertions other then stating that the comments to KRPC 8.4 indicate that the main focus of the rule is conduct that is illegal or involves moral turpitude.

Our prior case law belies the respondent's argument. The Disciplinary Administrator correctly points out that we found that conduct similar to the respondent's in this case, though less egregious, violated KRPC 8.4(d) in *In re Coder*, 272 Kan. 758, 763, 35 P.3d 853 (2001). *Coder* was an uncontested disciplinary case. This court, quoting the final hearing report, found that the respondent there " 'violated KRPC 8.4(d) when he failed to object to or assert as a defense the lack of proper service on [his client], when he failed to appear in court, when he failed to comply with the orders of the court, and when he failed to provide requested discovery.' " 272 Kan. at 763.

There can be little question that the respondent's conduct during the Sunderman and Francis matters was "prejudicial to the administration of justice." KRPC 8.4(d) (2007 Kan. Ct. R. Annot. 559). Judges Murgia, Vratil, and O'Hara all cited the respondent for repeated delays. Opposing counsel in both matters testified at the disciplinary hearing regarding the added cost to their clients that resulted from the respondent's failure to comply with deadlines. Judge O'Hara testified that the respondent's failure to respond to the partial motion for summary judgment in the Sunderman case wasted court resources, as Judge Murgia's law clerk had

to spend valuable time researching a dispositive motion that ended up being uncontested.

Comment 2 to KRPC 8.4 indicates that "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." (2007 Kan. Ct. R. Annot. 560.) In light of the record before us, we conclude that a rational factfinder could find it is highly probable that the respondent's repeated failure to comply with court orders and discovery deadlines seriously prejudiced the court, the other parties to the litigation, and opposing counsel. We therefore uphold the panel's conclusion that the respondent violated KRPC 8.4(d).

*Conclusion*

Dennis' blanket denial that his conduct violated any provision of the KRPC is without merit and contrary to the evidence in the record. We note that the respondent's denial is based largely on his argument that he provided adequate representation in *other* matters—other than the Sunderman and Francis cases—before the federal court. The respondent's representation in other cases, however, does not affect our conclusion that the respondent's conduct in the matters before us violated numerous rules. Contrary to the respondent's arguments in this case, the undisputed factual findings contained in the hearing report constitute ample evidence that the respondent violated KRPC 1.1, 1.3, 1.16(a), 3.1, 3.2, 3.3(a), and 8.4(d).

(3) Appropriate Discipline

Although we generally give some deference to the hearing panel's findings of fact and conclusions of law, see *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003), a panel's recommendation as to the appropriate discipline is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. Rule 212(f) (2007 Kan. Ct. R. Annot. 317); see *In re Pittman*, 285 Kan. 1133, 1141, 179 P.3d 404 (2008).

Dennis asserts that the panel's recommendation that he be indefinitely suspended is inappropriate because (1) none of the found violations were supported by clear and convincing evidence; (2)

the prior decisions of this court imposing indefinite suspension involve more egregious conduct than the respondent's actions in this case, demonstrating that a lesser sanction is appropriate; and (3) the hearing panel did not consider the fact that neither disciplinary complaint in this case was filed by a client. We have concluded that the hearing panel's conclusions as to the rule violations in this case were supported by clear and convincing evidence. Thus, we need only consider the respondent's second and third arguments at this time.

The respondent's second argument—that we have only imposed indefinite suspension in cases that involved more egregious conduct than this case—is undermined on a very basic level by his own history and prior suspension. This is a unique case in that the respondent has already been indefinitely suspended for very similar conduct to that involved in this action. He continues to be suspended, as he has not been reinstated since he was indefinitely suspended in 1999. We are not concerned with other attorneys' conduct that has led us to impose indefinite suspension, but rather with what discipline is appropriate under the facts of the case before us.

We note that the respondent's argument regarding our prior decisions imposing indefinite suspension is telling for an additional and important reason—the respondent's argument is an indication of his inability to understand or appreciate the wrongfulness of his actions that led to these proceedings. Throughout the respondent's brief and argument before this court, the respondent has continually denied responsibility for the delays in the federal cases or downplayed the significance of those delays. In fact, he denies that his conduct violated a *single rule* of professional conduct. The hearing panel found the respondent's refusal to take responsibility for his actions to be an aggravating factor in their determination of the recommended discipline in this case. Like the panel, we are deeply disturbed by the respondent's lack of remorse for his actions in these matters.

The respondent's third argument—that indefinite suspension is inappropriate since neither disciplinary complaint was filed by a client—similarly fails to recognize that his conduct has had an ad-

verse effect on opposing parties, the court, and the judicial system. The understanding that an attorney's actions have ramifications beyond the interests of his or her client is found throughout the KRPC and our prior disciplinary decisions. For this reason, the Commentary to Standard 9.4(f) of the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) states that the failure of an injured client to complain is neither an aggravating nor a mitigating factor to be considered in a disciplinary proceeding, undermining the respondent's claim.

In addition to his refusal to acknowledge the wrongfulness of his actions, the panel found as aggravating factors that the respondent had been subject to prior discipline in this jurisdiction and in other jurisdictions (including disbarment by the Tenth Circuit) for conduct similar to that in this case—namely, that he failed to comply with court orders and deadlines; that he had committed multiple offenses; and that he had substantial experience in the practice of law, having been admitted to practice in Kansas in 1985. The panel found that the only mitigating factors were some personal problems during the Sunderman litigation and the imposition of other sanctions by the federal courts.

The ABA Standards state that suspension is appropriate when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or (b) a lawyer engages in a pattern of neglect [that] causes injury or potential injury to a client." ABA Standard 4.42. Standard 6.22 likewise provides that suspension is "appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding." ABA Standard 6.22.

According to this same set of standards, reprimand—which the respondent argues should be the greatest discipline imposed in this case—is appropriate when an attorney's actions are merely "negligent" and could potentially cause injury or when a lawyer "negligently fails to comply with a court order or rule, and causes . . . interference or potential interference with a legal proceeding." ABA Standard 6.23. See Standard 4.43.

Disbarment is generally appropriate in cases where a lawyer "knowingly fails to perform services for a client and causes serious or potentially serious injury to a client" or "engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." ABA Standard 4.41(b), (c). Disbarment is also appropriate where a lawyer, "with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." ABA Standard 6.11. The same is true when a lawyer "knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party" or a legal proceeding. ABA Standard 6.21.

We find ABA Standard 4.51 to provide the most guidance in this case. That provision states that disbarment is generally appropriate "when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client." Although it is arguable whether the respondent's actions in this case caused injury to either of his clients, it is unquestionable that such actions—repeated failure to comply with court orders and discovery deadlines, as well as lack of candor and indifference to the legal process—could cause such injury. In fact, the Francis litigation was ultimately dismissed with prejudice due to the respondent's repeated "delay strategies." The facts in this case clearly demonstrate that the respondent fails to comprehend the basic procedures that must be followed in this state and in the federal system.

In considering the discipline appropriate in this case, we note that the hearing panel found that the respondent knowingly had represented his clients in such a way that violated numerous court orders, led to delays in court administration, and caused the opposing parties to expend large amounts of time and money. These findings are supported by clear and convincing evidence. Moreover, the respondent has engaged in this type of behavior in the past and was indefinitely suspended for that conduct. We are convinced

that the respondent has not learned from his previous indefinite suspension, as he shows no remorse for his actions in this case and no recognition of the wrongfulness of or possible consequences for those actions.

In light of the respondent's pattern of repeated violations and his failure to appreciate the wrongfulness of that conduct, we do not believe that an additional indefinite suspension is the appropriate discipline in this case. Rather, the ABA Standards provide that disbarment is an appropriate discipline when a lawyer "has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." ABA Standard 8.1(b). In this case, despite the fact that the respondent was indefinitely suspended in 1999 for conduct similar to that involved in the Sunderman and Francis matters, the respondent repeatedly violated court orders and failed to comply with known deadlines. This pattern of misconduct, when viewed in light of the respondent's previous disciplinary record, is all the more egregious.

After careful consideration, we conclude that the appropriate discipline is disbarment.

IT IS THEREFORE ORDERED that the respondent, Stephen Jay Dennis, be and he is hereby disbarred from the practice of law in the state of Kansas, effective on the date of this opinion, in accordance with Supreme Court Rule 203(a)(1) ( 2007 Kan. Ct. R. Annot. 261).

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Stephen Jay Dennis from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that this opinion shall be published in the official Kansas Reports, that the costs herein shall be assessed to the respondent, and that the respondent forthwith shall comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337).