No. 102,925

In The Matter of KEVIN PETER SHEPHERD, *Respondent*.

(220 P.3d 359)

Opinion filed November 25, 2009.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio Chtd., of Topeka, argued the cause, and *Kevin Peter Shepherd*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Kevin Peter Shepherd, of Topeka, an attorney admitted to the practice of law in Kansas in 2000.

On January 7, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On January 23, 2009, the respondent filed an answer to the formal complaint. On April 21, 2009, a hearing was held before a panel of the Kansas Board for Discipline of Attorneys, where the respondent appeared in person and was represented by counsel. The hearing panel determined that the respondent violated KRPC 1.15(a) (2009 Kan. Ct. R. Annot. 507) (safekeeping property), KRPC 1.15(d)(1) (preserving client funds), KRPC 1.15(d)(2)(iii) (maintain records of funds), KRPC 3.3(a)(1) (2009 Kan. Ct. R. Annot. 545) (candor toward tribunal), and KRPC 8.4(c) (2009 Kan. Ct. R. Annot. 602) (conduct involving dishonesty, fraud, deceit, or misrepresentation). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"*Representation of Larry Bailey*

"2.   In September, 2003, the Respondent agreed to represent Larry Bailey in a criminal case pending in the Shawnee County District Court for a flat fee of

$10,000. Mr. Bailey had been charged with felony manufacture of methamphetamine and other misdemeanor charges.

"3.    At the time Mr. Bailey retained the Respondent, Mr. Bailey had $3,000 in his Shawnee County jail account. From that money, the Respondent assisted Mr. Bailey in posting two bonds, each in the amount of $1,000. The Respondent paid himself $800 of the remaining money and provided the last $200 to Mr. Bailey.

"4.    In October, 2003, the Respondent agreed to represent Mr. Bailey in all of his pending cases. At the time, Bailey also had numerous misdemeanor cases pending in the Shawnee County District Court and several cases pending before the Topeka Municipal Court. Further, Mr. Bailey also had a limited civil action pending before the Shawnee County District Court. Later, the Respondent represented Mr. Bailey in an action for divorce. The Respondent's fee for representing Mr. Bailey in all of the cases was a flat fee of $15,000.

"5.    On December 29, 2003, the Respondent prepared Power of Attorney for Mr. Bailey's signature. Mr. Bailey executed the document and the Respondent was granted Power of Attorney. Mr. Bailey provided the Respondent with a Power of Attorney in order for the Respondent to sell real property in behalf of Mr. Bailey.

"6.    The Respondent sold Mr. Bailey's property and the Respondent received $22,508.10 in proceeds from the sale. The Respondent paid himself his flat fee of $15,000. The Respondent provided the remaining $7,508.10 to Mr. Bailey.

"7.    While the Respondent initially deposited the $15,000 into his trust account, it was withdrawn from his trust account, in its entirety, shortly thereafter.

"8.    In May, 2004, Mr. Bailey asked the Respondent to handle his financial affairs. Meaning, Mr. Bailey asked the Respondent to receive and deposit his Social Security Disability checks, his Veterans Administration checks, and other monies, pay his bills, and distribute the remaining funds. The Respondent agreed. The Power of Attorney that Mr. Bailey previously granted to the Respondent was still in effect and allowed the Respondent to act in this manner.

"9.    Beginning in May, 2004, the Respondent received monthly Social Security Disability checks in the amount of $666 and monthly Veterans Administration checks in the amount of $2,345. Additionally, the Respondent received bond refunds in behalf of Mr. Bailey in the total amount of $3,000. The Respondent and Mr. Bailey agreed that the Respondent was to be paid an additional $200 per month to handle Mr. Bailey's financial affairs.

"10.    The Respondent did not open a separate account for Mr. Bailey. Rather, the Respondent deposited some of Mr. Bailey's checks into the Respondent's trust account, some of the checks into the Respondent's business account, and some of the checks into the Respondent's personal account. The Respondent also cashed some of Mr. Bailey's checks without first depositing the proceeds into any account.

"11.    In October, 2004, Mr. Bailey was incarcerated in the Shawnee County jail. Later, Mr. Bailey was transferred to the Lansing State Penitentiary.

"12.   While Mr. Bailey was incarcerated, Mr. Bailey contacted the Respondent and told him that his motor home had been impounded and that the Respondent needed to retrieve it before it was sold by the city. The Respondent failed to retrieve the motor home and the city sold it at auction. Because Mr. Bailey lost his motor home through the Respondent's lack of diligence, the Respondent credited Mr. Bailey's bill $1,500.

"13.   Robert Straub, Auditor for the Disciplinary Administrator's office, investigated the Respondent's trust account. Mr. Straub asked the Respondent for his records relating to Mr. Bailey's financial affairs. However, the Respondent failed to keep complete records of Mr. Bailey's financial affairs. The Respondent pieced together some of the information for Mr. Straub.

"14.   Eventually, Mr. Straub was able to determine that the Respondent received $51,656.50 but only paid out $46,513.17 on behalf of Mr. Bailey. Consequently, the Respondent should continue to have $5,143.33 in his trust account or a separate account for Mr. Bailey.

"15.   While the investigation was pending, Mr. Bailey died.

"16.   Prior to the hearing on this matter, the Respondent placed $5,143.33 in his trust account to hold in behalf of Mr. Bailey's heirs.

"17.   The Respondent commingled Mr. Bailey's money with his own. He failed to maintain adequate records. The Respondent never provided Mr. Bailey with an accounting of his money. The Respondent failed to promptly disburse the remaining funds to Mr. Bailey, or later, Mr. Bailey's heirs. Finally, the Respondent converted Mr. Bailey's money and used it personally.

"18.   To date, the Respondent continues to owe Mr. Bailey's heirs $5,143.33. At the hearing on this matter, the Respondent explained that while he knows that Mr. Bailey has two daughters, he has not attempted to locate them or provide them with the monies owed because they have serious drug problems.

*"Bankruptcy*

"19.   On October 14, 2005, the Respondent filed for the bankruptcy protection of Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Kansas. Cary Standiferd represented the Respondent and Patricia Hamilton served as the Chapter 7 bankruptcy trustee on the Respondent's bankruptcy case.

"20.   In the Voluntary Petition filed in the bankruptcy case, the Respondent answered certain questions regarding his personal property as of the time he filed the petition. Specifically, the Respondent was asked to divulge whether he had any outstanding accounts receivable as of the date of the filing. In Schedule B, the Respondent represented that he had no outstanding accounts receivable as of the date of filing the bankruptcy petition. At the time the Respondent filed the bankruptcy petition, he was required to sign a Declaration Concerning Debtor's Schedules. The declaration provides:

### 'DECLARATION CONCERNING DEBTOR'S SCHEDULES
#### 'DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

'I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 14 sheets, and that they are true and correct to the best of my knowledge, information, and belief.'

The Respondent signed the declaration, electronically, on October 14, 2005.

"21.   The first meeting of creditors was scheduled for November 17, 2005. The Respondent failed to appear because he was in a jury trial. As a result, the Chapter 7 [trustee] rescheduled the meeting for December 13, 2005.

"22.   On December 13, 2005, the Chapter 7 [trustee] held the first meeting of creditors. The Respondent appeared with Mr. Standiferd. During the meeting, the Respondent testified under oath as follows:

'MS. HAMILTON: The schedules and Statement of Financial Affairs that have been filed on your behalf, did you sign those documents?

'MR. SHEPHERD: Yes, I did.

'MS. HAMILTON: And before you signed them had you read them?

'MR. SHEPHERD: Yes, I did.

'MS. HAMILTON: Is the information contained in the documents based on your own knowledge?

'MR. SHEPHERD: Yes.

'MS. HAMILTON: To the best of your knowledge, did you list all of your property?

'MR. SHEPHERD: Yes.

'MS. HAMILTON: And did you list all of your creditors?

'MR. SHEPHERD: Yes.

'MS. HAMILTON: And can you think of any changes or corrections that should be made to any of the documents?

'MR. STANDIFERD: We do have one change.

'MR. SHEPHERD: Adding a creditor.

'MS. HAMILTON: All right. Aside from the addition of the creditor, can you think of any other changes or corrections?

'MR. SHEPHERD: No, ma'am.'

Later, in the first meeting of creditors, the following exchange occurred:

'MS. HAMILTON: All right. Let's go down the list. Now, on the date that you filed you don't have any accounts listed. Now, I presume that you bill on a monthly basis?

'MR. SHEPHERD: Yeah, but I do a lot of criminal work, and get my fees a lot of that is up front.

'MS. HAMILTON: Okay.

'MR. SHEPHERD: So, they pay a flat fee up front, and it takes them up until a certain point and then they pay another flat fee.

'MS. HAMILTON: Okay.

'MR. SHEPHERD: Some people are on payments.

'MS. HAMILTON: Okay. Well, that's what I need to know is those that are on payments and on the date you filed, I need—what I'd like to see is your billing statements. If you could just show me—I don't want to see anything about the detailed time entry, just the amount billed. I'd like to see your billing statements for September and October.

'MR. SHEPHERD: Just September and October?

'MS. HAMILTON: Well, those would be amounts I believe that would be due on the date that you filed, which would be October 14th.

'MR. SHEPHERD: Uh-huh.

'MS. HAMILTON: And to the extent that any of those were paid.

'MR. SHEPHERD: You want to know which ones were paid and which ones were billed out?

'MS. HAMILTON: Right.

'MR. SHEPHERD: Okay.

'MS. HAMILTON: And were still due. Now, since you've filed on October 14th has anyone paid you for amounts that you would have billed on or prior to the date that you filed, October 14th?

'MR. SHEPHERD: Has someone paid me for a bill I sent out before October 14th after October 14th?

'MS. HAMILTON: Right. Because on the date that you filed

'MR. SHEPHERD: Yes.

'MS. HAMILTON: Right. And I'll need an accounting of those funds.

'MR. SHEPHERD: Okay.

'MS. HAMILTON: Right. Because on the date that you filed those accounts became part of the estate so I'll need to know what they were, how much they were, who owes them, and then while I'm not opposed to having you collect those, they would need to be turned over to the bankruptcy estate if they were sufficient to administer . . . .'

"23.    On March 3, 2006, Judge Janice Karlin signed an order granting the Respondent a discharge.

"24.    On March 14, 2006, the Respondent filed an Amendment to Debtor's Schedules. In the amendment, the Respondent asserted that, as of the filing date, he had $10,228 in outstanding accounts receivable.

"25.    After the Respondent filed the amendment, the Respondent stated that only $2,380 of the outstanding accounts receivable were collectable.

"26.    On July 6, 2006, the Chapter 7 [trustee] filed a motion for turnover. In her motion, the Chapter 7 [trustee] sought an order from the court directing the Respondent to turn over the $2,380 in accounts receivable and other documents necessary to administer the bankruptcy estate within 20 days.

"27.    On July 19, 2006, the Chapter 7 [trustee] filed a motion to approve compromise and settlement with debtor. In that motion, the Chapter 7 [trustee]

sought court approval for her agreement with the Respondent regarding a payment plan regarding the outstanding accounts receivable.

"28. Later, on July 25, 2006, the Chapter 7 [trustee] withdrew her motion for turnover because the Respondent had entered into a repayment plan with the Chapter 7 [trustee].

"29. On November 30, 2006, the Court ordered the Respondent to turn over the accounts receivable to the Chapter 7 trustee. The Respondent did not comply with the Court's order.

"30. On December 1, 2006, however, the Chapter 7 [trustee] withdrew her motion to approve compromise and settlement with debtor. The Chapter 7 [trustee] withdrew her motion because she had received additional information that at the time the bankruptcy was filed, the Respondent had approximately $16,000 in accounts receivable.

"31. On February 28, 2007, the United States trustee filed an adversary proceeding a Complaint for Revocation of Discharge. In her complaint, the United States trustee alleged that the Respondent engaged in conduct involving fraud and dishonesty. Specifically, the United States trustee asserted:

'22. [The Respondent] did not disclose the correct amount in his schedules or at his meeting of creditors, ad [*sic*] when afforded the opportunity to do so, [the Respondent] provided false information to the chapter 7 trustee.

'23. Further, [the Respondent] has failed to report the receipt of estate property, the payment of the pre-petition accounts receivable, and has failed to deliver the estate property to the trustee.'

"32. On March 30, 2007, the Respondent filed a second amendment to Schedule B. In the second amendment, the Respondent stated that he had $46,285.19 in accounts receivable at the time he filed the Chapter 7 bankruptcy petition.

"33. The United States trustee notified the Respondent that he intended to take the Respondent's deposition regarding the allegations contained in his complaint. Shortly before the deposition was to begin, on September 28, 2007, the Respondent stipulated that his discharge should be revoked. Specifically, the Respondent stipulated to the following:

'6. The parties agree and respectfully request this Court to enter a permanent order against Debtor revoking his discharge and forever barring and denying his Chapter 7 discharge for those debts incurred up to and including October 14, 2005, including those listed on Schedule F of his petition. The parties agree that said permanent order shall not include any findings of fact and shall not constitute evidence of the accuracy of the allegations contained in the complaint filed by the U.S. trustee.'

"34. On October 1, 2007, the Court accepted the parties stipulation and revoked the Respondent's discharge in bankruptcy.

"35. On January 29, 2008, the Chapter 7 trustee filed a motion to show cause why the Respondent should not be held in contempt of court for failing to comply

with the Court's November 30, 2006, order, directing the Respondent to turn [over all] of the accounts receivable to the Chapter 7 trustee.

"36. On January 31, 2008, the Court issued an order to show cause why the Respondent should not be held in contempt and an order for the Respondent and Mr. Standiferd to appear at a hearing.

"37. On February 25, 2008, the Respondent wrote to his attorney regarding the outstanding accounts receivable. According to the Respondent's calculations, he continued to owe the Chapter 7 trustee $5,000.50 in outstanding accounts receivable. The Respondent paid $1,000 that day.

"38. On May 13, 2008, the Court entered an order dismissing the Chapter 7 trustee's motion to show cause because the Respondent and the Chapter 7 trustee had resolved the issue regarding the outstanding accounts receivable.

## "CONCLUSIONS OF LAW

"1. Prior to the hearing, in his Answer, the Respondent admitted that he violated KRPC 1.15 with regard to his handling of Mr. Bailey's financial affairs. The Respondent denied, however, that he violated KRPC 8.4 in connection with his representation of Mr. Bailey. The Respondent further denied that he violated any rules in connection with his bankruptcy case.

"2. Based upon the Respondent's Answer as well as the findings of fact included above, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.15, KRPC 3.3, and KRPC 8.4, as detailed below.

"3. Lawyers must safeguard clients' property. KRPC 1.15 provides the requirements in this regard. The Respondent violated KRPC 1.15 in three separate and distinct ways.

"4. First, the Respondent violated KRPC 1.15(a). That section provides:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

Thus, the Respondent violated KRPC 1.15(a) when he commingled his funds with Mr. Bailey's funds.

"5. Next, the Respondent violated KRPC 1.15(d)(1). KRPC 1.15(d)(1) provides:

'(d) Preserving identity of funds and property of a client.

(1) All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:'

The Respondent violated KRPC 1.15(d)(1) when he failed to deposit Mr. Bailey's funds in the Respondent's trust account or in a separate account for Mr. Bailey.

"6. Finally, the Respondent violated KRPC 1.15(d)(2)(iii). KRPC 1.15(d)(2)(iii) provides as follows:

'(d)  Preserving identity of funds and property of a client.

(2)  The lawyer shall:

(iii)  Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accountings to the client regarding them.'

Clearly, the Respondent violated KRPC 1.15(d)(2)(iii) when he failed to maintain complete records of his trust account and specifically, complete records of Mr. Bailey's funds. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a), KRPC 1.15(d)(1), and KRPC 1.15(d)(2)(iii).

"7.  KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The Respondent filed a document with the United States Bankruptcy Court with a false statement the statement that he did not have any accounts receivable at the time he filed for the protection of Chapter 7 of the United States Bankruptcy Code. As it turns out, the Respondent had more than $46,000 in accounts receivable at that time. The Respondent should have either done the work necessary to determine his accounts receivable prior to filing or made note on the petition that he had accounts receivable in an unknown amount, and then, provided the precise figure at the time of the first meeting of creditors. The Respondent made a second false statement of material fact to a court when in his amendment he stated that he had $10,228 in accounts receivable. Because the Respondent provided false information to the District Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"8.  'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he provided false information to the United States Bankruptcy Court regarding his accounts receivable. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to properly safeguard his property. Additionally, the Respondent violated his duty to the legal profession and the public to maintain his personal integrity.

"*Mental State*. The Respondent should have known that he was violating his duty to his client. The Respondent negligently violated his duty to the legal profession and the public.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused serious actual injury.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factor present:

"*Prior Disciplinary Offenses*.

"*A Pattern of Misconduct*. The Respondent engaged in a pattern of misconduct with regard to both instances of misconduct. First, regarding the handling of Mr. Bailey's financial affairs, the Respondent engaged in a pattern of mismanagement, poor record keeping, and commingling of funds. The Respondent's records were so incomplete and inaccurate, that he had no way of knowing how much money he held in behalf of Mr. Bailey.

"Next, the Respondent was given several opportunities to inform the bankruptcy court and Chapter 7 trustee the amount of his accounts receivable. First, the Respondent could have informed the bankruptcy court of his accounts receivable at the time he filed the petition. Second, the Respondent could have informed the Chapter 7 trustee of the amount of the accounts receivable during the first meeting of creditors. Next, the Chapter 7 trustee asked that the Respondent provide that information within 25 days of the first meeting of creditors. The Respondent failed to do so. On March 13, 2006, the Respondent amended his schedules and included a statement that his accounts receivable totaled $10,228. However, that figure was not accurate. Later, the Chapter 7 trustee received information that the Respondent's accounts receivable totaled approximately $16,000. It was not until March 30, 2007, that the Respondent completed a thorough review of outstanding accounts receivable and filed what he claims to be an accurate total of accounts receivable pending at the time he filed his bankruptcy petition. Accordingly, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"*Multiple Offenses*. The Respondent violated KRPC 1.15(a), KRPC 1.15(d)(1), KRPC 1.15(d)(2)(iii), KRPC 3.3(a)(1), and KRPC 8.4(c). As such, the Respondent committed multiple offenses.

"*Vulnerability of Victim*. The Respondent held Power of Attorney to conduct Mr. Bailey's business. Much of the time that the Respondent represented Mr. Bailey and was handling his financial affairs, Mr. Bailey was incarcerated. The Respondent never provided Mr. Bailey with an accounting of the funds received and paid out in his behalf. Clearly, Mr. Bailey was vulnerable to the Respondent's misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommen-

dation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent generally cooperated during the hearing process. However, during the investigative process, the Respondent did not timely provide Mr. Straub with requested information. Additionally, during the hearing, the Respondent did not accept full responsibility for the misconduct. At times during the hearing, the Respondent blamed his assistant, Mr. Standiferd, and Ms. Hamilton for his misconduct.

"*Inexperience in the Practice of Law.* The Respondent was admitted to the practice of law in 2000. The Respondent had less than four years of experience when the misconduct commenced.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent enjoys the respect of attorneys, friends, employees, and acquaintances as evidenced by the many letters received as Respondent's Exhibit A.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.12   Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'6.13   Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be indefinitely suspended. The Respondent recommended that he be censured and that the censure be published.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of 3 months. The Hearing Panel further recommends that prior to being reinstated to the practice of law, the Respondent shall locate Mr. Bailey's legal heirs and return the $5,143.33, owed to Mr. Bailey. Finally, the Hearing Panel recommends that prior to being reinstated to the practice of law, the Respondent shall locate an attorney to supervise his practice. The supervising attorney must be first approved by the Disciplinary Administrator. The supervising attorney will work with the Respondent for one year on law office practice management, client engagements, trust accounts, and financial record-keeping.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober,* 288 Kan. 498, 505, 204 P.3d 610 (2009) (citing *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]); see Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321).

The respondent filed no exceptions to the panel's final hearing report. Thus, the hearing panel's final report is deemed admitted. Supreme Court Rule 212(c) (2009 Kan. Ct. R. Annot. 337). Upon our review of the entire record we conclude that the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. We therefore adopt those findings and conclusions. With respect to the discipline to be imposed, the panel's recommendation is advisory only and shall not prevent the court from imposing a different discipline. *In re Cline,* 289 Kan. 834, 217 P.3d 455 (2009); Supreme Court Rule 212(f) (2009 Kan. Ct. R. Annot. 337).

Before oral argument, the respondent submitted additional information to the court, including his own affidavit and an affidavit from Michael E. Francis, the attorney he selected to monitor his practice of law. We have considered this additional information in arriving at our decision in this case.

During oral argument, the respondent did not seek to avoid responsibility for the admitted violations of the Supreme Court Rules for attorney discipline. Instead, the respondent concentrated his oral argument on the additional evidence submitted relating to the respondent's efforts to bring his practice into full compliance with the rules of professional conduct and, in light of the panel's recommendation for suspension, to prepare his practice for that possibility, including notifying the judges of the criminal division of the Third Judicial District of that possibility.

The respondent offered his sincere apology for the harm caused to the court, his clients, and the profession. He stated that he has addressed the problems causing his misconduct and that he continues to practice law under strict attorney monitoring without incident. We recognize the effort the respondent has made to remedy the actions giving rise to the misconduct in this case. We acknowledge the progress the respondent has made to insure the proper handling of client funds and further to insure appropriate record-keeping for those funds. Finally, we note that, as of the hearing on this matter, funds belonging to the estate of Larry Bailey were still being held in an interest-bearing account pending distribution to his recently located heirs.

We must observe, however, that the respondent's actions constitute serious violations of the KRPC. The respondent made false statements of material fact to the United States Bankruptcy Court and engaged in dishonesty, deceit, and misrepresentation when he provided false information on more than one occasion to that same court regarding his accounts receivable. Based upon the clear and convincing evidence of record, we conclude that a suspension of 3 months is not an appropriate sanction under the circumstances of this case. The more appropriate sanction in this case is a 3-year suspension from the practice of law in the state of Kansas.

Nevertheless, we acknowledge the efforts of the respondent and give full consideration to the entire record before this court, including the additional exhibits submitted to this court and discussed during oral arguments. Thus, if the respondent submits a motion to this court after the first year of his suspension for reinstatement subject to a probationary plan, we would entertain that motion subject to the following conditions set forth below.

Before submitting any motion to this court, the respondent must present to the Disciplinary Administrator a plan of probation, addressing his then-present circumstances, as well as a proposed plan of practice as a Kansas attorney, addressing those factors discussed in his affidavit to this court that remain applicable, including evidence of ongoing treatment with his therapist along with a current assessment of his condition from a clinician, and evidence of distribution of the funds belonging to Larry Bailey's estate to Bailey's

heirs. If the Disciplinary Administrator approves the probationary plan submitted by the respondent, that approval shall be attached to the respondent's motion to suspend the remaining 2 years of his suspension. If his probationary plan is not approved by the Disciplinary Administrator, the respondent may file his motion without such approval.

This court will then consider the respondent's motion to suspend the balance of his suspension. If the court approves the probation plan, the court will suspend the remaining 2 years of the respondent's suspension and place the respondent on probation for a period of 2 years subject to conditions contained in such order. If the court denies the respondent's motion, the respondent shall complete the term of his 3-year suspension from practicing law in the state of Kansas.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Kevin Peter Shepherd be suspended from the practice of law in the state of Kansas for a period of 3 years, effective the date of this opinion in accordance with Supreme Court Rule 203(a)(2) (2009 Kan. Ct. R. Annot. 272).

IT IS FURTHER ORDERED that after a period of 1 year, the respondent may apply by motion to this court for a suspension of the remaining 2 years of his 3-year suspension under the provisions set forth in this opinion. If such application is approved, additional orders will be entered by this court. If the application is not approved, the respondent shall complete the term of his 3-year suspension.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2009 Kan. Ct. R. Annot. 361), and in the event the respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2009 Kan. Ct. R. Annot. 376).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

ROSEN and JOHNSON, JJ., not participating.

CAPLINGER and FAIRCHILD, JJ., assigned.