No. 103,300

In the Matter of PAUL P. HASTY, JR., *Respondent*.

(227 P.3d 967)

Opinion filed April 15, 2010.

*Kimberly L. Knoll*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with her on the formal complaint for the petitioner.

*Edward M. Boyle*, of McCormick, Adam & McDonald, P.A., of Overland Park, argued the cause, and *Paul P. Hasty, Jr.*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Paul P. Hasty, Jr., of Overland Park, an attorney admitted to the practice of law in Kansas in 1976 and in Missouri in 1985.

On July 16, 2007, the respondent reported himself to the Missouri disciplinary authorities regarding his representation in a case. On August 9, 2007, counsel for respondent forwarded the same report to the Disciplinary Administrator in Kansas. After investigation, the Missouri Disciplinary Hearing Panel concluded that respondent violated Missouri Rules of Professional Conduct. The Missouri Supreme Court reprimanded respondent on November 13, 2008, as a result of the violations. On March 12, 2009, the office of the Disciplinary Administrator in Kansas filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer to the formal complaint on March 26, 2009. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 2, 2009, where the respondent appeared in person and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.3 (2009 Kan. Ct. R. Annot. 426) (diligence) and 1.4(a) (2009 Kan. Ct. R. Annot. 443) (communication). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"2.    On July 16, 2007, the Respondent reported himself to the Missouri disciplinary authorities for his action related to his representation of Allstate Insurance Company in *Deer v. Aldridge*. Later, on August 9, 2007, an attorney representing the Respondent forwarded the letter to the Disciplinary Administrator's office. The Respondent's letter to the Missouri disciplinary authorities provided as follows:

'I was retained by Allstate Insurance Company with regard to a matter that Allstate had litigated in Greene County, Missouri, *Deer v. Aldridge*. Judgment had been entered on the case at the time I was retained and the issue was whether Allstate's claim file should be made available to a party requesting the file. I gave Allstate my opinion with regard to the matter and the issue of production of the file was addressed. My file was then closed. With the closing of the file, it was sent to the storage facility that we use for closed files.

'Some time later, suit was filed against Allstate. The file was retrieved from storage and re-opened. Apparently, it was later sent back to the storage facility. It was misplaced.

'Written discovery was received on this case, and was either held by the file clerk or routed to the closed file in storage and there was not a timely response. We later discovered that the file was missing. It was located as a closed file. I set about responding to discovery, including objections. The objections were untimely because of the delay. They actually crossed in the mail with discovery motions which arrived while I was on vacation. The Court granted the discovery motions. The Court overruled my request to object out of time.

'Additional discovery was served, and there was deposition testimony taken. As a result of the deposition testimony, it was my belief that the case would settle. I did not take steps to respond to the additional discovery and it was not sent to Allstate. I also did not keep Allstate advised concerning the motions filed with regard to the discovery or the Court's orders.

'It became apparent that the case was not going to settle. I advised Allstate of the discovery issues and the problems that had been created. Allstate has retained substitute counsel and I have withdrawn from the case, and I understand Allstate is taking steps to ask the Court to set aside its orders with regard to discovery because Allstate did not know that the Court had entered orders. My withdrawal was forwarded to the Court today.

'I am sending this report to you because it is my understanding that it is my obligation to report that I did not properly attend to this file for this client and did not keep the client timely advised of events.'

"3.    On March 14, 2008, a Missouri disciplinary committee filed Information against the Respondent. Thereafter, the Respondent and the Missouri disciplinary authorities entered into a factual stipulation. The stipulation provides, in pertinent part, as follows:

'Dale Deer and Terri Deer filed a lawsuit in Johnson County, Missouri as a result of a motor vehicle accident which occurred September 15, 2000. The Deer's [*sic*] sued Paul Jason Aldridge for injuries which were sustained by Dale Deer as a result of that accident. That case was Case Number CV402-9CC.

'Prior to the filing of that lawsuit Dale Deer and Terri Deer had offered to settle their claims against Mr. Aldridge for the sum of $24,000.00. Mr. Aldridge was insured by the Allstate Insurance Company and $40,000.00 was the limit of his applicable insurance. Allstate Insurance Company did not settle the claim and the lawsuit was filed. In that lawsuit Plaintiffs were represented by attorney Andrew J. Gelbach and defendant Aldridge was represented by Richard Modin. On January 11, 2005, pursuant to a contract to limit recovery given pursuant to § 537.065 R.S.Mo. a judgment was entered in favor of Plaintiffs and against Defendant Aldridge in the sum of $750,000.00 plus prejudgment interest of $257,802.53. The contract to limit recovery limited [the] Deer[s] to the applicable insurance coverage and any other additional sums that might be recoverable from Allstate Insurance Company as a result of Allstate's handling of the claim. That agreement included an assignment of the bad faith claim.

'On February 10, 2005, Respondent was hired by Allstate to advise Allstate concerning a request that was made by Plaintiff's attorney, Mr. Gelbach, for Allstate's claim file. Respondent advised Allstate that they needed to produce the claim file including the electronic portion of the file. Respondent's last contact with Allstate was on March 13, 2005. At some point thereafter the file was closed in the Wallace Saunders office and the file was sent to storage off site.

'On August 26, 2006, an equitable garnishment action was filed in Jackson County in Case Number 0516-CV24031. In that equitable garnishment [the] Deer[s] sought to enforce their judgment for slightly more than $1 million dollars against Defendant Paul Jason Aldridge and Allstate Insurance Company. On October 24, 2005, Respondent was hired by Allstate to defend that equitable garnishment action. The file at Wallace Saunders was returned from storage and on October 25, 2005, an answer was filed to the equitable garnishment. From that time until September of 2006 there was no activity in the case.

'On September 22, 2006, Defendant Aldridge filed a cross-claim against Defendant Allstate Insurance Company alleging bad faith, negligent claims handling, breach of fiduciary duty and seeking punitive damages. Also on that date Plaintiffs Deer filed their first interrogatories directed to Allstate. On October 30, 2006, Aldridge sent first interrogatories and first request for production to Allstate.

'Sometime between October 25, 2005, when the answer was filed to the equitable garnishment action and September 22, 2006, the file at Wallace Saunders was inadvertently returned to storage. This caused pleadings and discovery requests from [the] Deer[s] and Aldridge of September and October

2006 to be routed to the closed file box for filing rather than being forwarded to Respondent for his review and response. The file was located in storage approximately on the first of February 2007. At that time the cross-claim of Aldridge against Allstate which was filed on September 22, 2006, the first interrogatories and first request for production of documents which had been filed October 30, 2006, and the second interrogatories and second request for production of documents from Aldridge to Allstate filed on January 8, 2007 were located. Once the file was found Respondent prepared an answer for Allstate to the cross-claim which was filed on February 6, 2007. Respondent prepared objections to the discovery from Aldridge to Allstate which was filed February 7, 2007. On February 12, 2007, Respondent wrote to Allstate concerning the interrogatories and requests for production and forwarded to Allstate the discovery requests including the request for the so called McKinsey documents which were contained in Aldridge's second interrogatories to Allstate and Aldridge's second request for production to Allstate.

'On February 13, 2007, Mr. Hasty went on vacation and did not return until February 22, 2007. On the day that Mr. Hasty left for vacation, [the] Deer[s] filed a motion for enforcement of discovery and cross-claimant Aldridge filed a motion for enforcement of discovery or sanctions. Allstate's objections to discovery were filed the same day that the motions for enforcement were filed. These objections were filed out of time due to the files having been, in effect, lost.

'Respondent did not advise Allstate that the file had been lost or that timely objections to discovery had not been made.

'On February 16, 2007, Respondent received an email from Marilyn Bokenkroger at Allstate which was directed to Steve Jurgensen with copies to Richard Vavra, Fredericka Reed, and Respondent. In that email Marilyn Bokenkroger states "I am requesting direction from FTE Steve Jurgensen on your question involving the second and third request for production and the second interrogatories, which are as follows: °°°" These discovery requests referenced in the Bokenkroger email are those dealing with McKinsey documents.

'On February 27, 2007, the court sustained the motions to compel and Allstate was granted ten (10) days to respond. Also on February 27, 2007, the court ordered Allstate to make its answer more definite and certain. Allstate was given ten (10) days to do that. When Respondent learned that the orders for enforcement of discovery and sustaining the motion to make more definite and certain had been entered he contacted the court, advised the court that the file had been lost and that he had been on vacation and requested additional time. The request for relief was denied.

'On March 6, 2007, the deposition of Mary Green was taken by counsel for Plaintiffs and Aldridge. Mary Green was the claims handler who had made the decision not to pay the $40,000.00 demand in the case. After her deposition Respondent was of the opinion that there was no defense to the bad faith claim. On March 9, 2007, Respondent had a telephone conference with All-

state representatives including Marilyn Bokenkroger and Richard Vavra. In that telephone conversation it was agreed that there was no defense to the claim and that the underlying million dollar judgment should be paid which in Respondent's opinion would have made moot the issues in the equitable garnishment and bad faith claim.

'On March 15, 2007, Respondent called Richard Vavra asking him when he could expect being given the authority to actually pay the underlying judgment. On March 13, 2007, Respondent filed a motion on behalf of Allstate to extend time to respond to the motion to enforce discovery and that motion was sustained granting an extension until March 16, 2007.

'On March 19, 2007, Respondent prepared and filed a motion on behalf of Allstate to allow objections to the first interrogatories and first request for production out of time due to the file having been lost. On April 2, 2007, the court entered an order denying Allstate's motion to allow the objections out of time. Respondent did not advise Allstate that he had filed the motion nor did he advise Allstate that the motion had been denied.

'On May 1, 2007, the court entered an order striking Allstate's pleadings for failure to respond to discovery. Respondent did not advise Allstate of the fact that their pleadings had been stricken. On July 2, 2007, the court held a hearing on the Deer motion for sanctions and for Aldridge's motion for sanctions and for contempt. Respondent did not advise Allstate of the motions or of the hearing.

'On July 2, 2007, prior to the hearing Respondent received a telephone call from Allstate advising him to make an offer to Plaintiffs and to Aldridge of $500,000.00. From the date of February 16, 2007, the date of the Bokenkroger email, until July 2, 2007, Respondent had received no instructions from Allstate in regard to the so called McKinsey documents except that they were quite voluminous and numbered about 18,000 pages. Respondent never saw the documents and was not aware of their contents.

'On July 2, 2007, in the hearing before Judge Manners, Respondent was asked by Judge Manners why Respondent had not filed a response to the motion for contempt or to the motion for additional sanctions. Respondent stated to the court, "Judge there is a lot of discovery here. I am close to having responses to almost all of it, but every one of these things has something that has been very difficult to answer. I keep thinking we are going to have the last pieces of information available and it hasn't happened, and I just haven't responded. And for that reason I thought I would be able to respond to this shortly. I know we are out of time. There is [sic] a few things on each of these items that are very difficult. And there is [sic] really our status."

'At the time that Respondent made that statement to the court he had been advised by Allstate that the underlying judgment would be paid. He received authority to pay $500,000.00 of that amount on the date of the hearing. He had not received any instructions as to the McKinsey documents. Respondent was prepared to produce a substantial number of documents and did in fact

produce 15,168 documents. At the time Respondent appeared before Judge Manners he was unable to produce the McKinsey documents and he was unable to produce documents relating to the claims that had been made against Allstate for bad faith. Respondent advised the court that the McKinsey material he understood to be approximately 18,000 documents. At the hearing Judge Manners found Allstate to be in contempt and gave Allstate until July 6, 2007, to provide the materials sought and ordered a fine of $10,000.00 per day against Allstate to commence on July 6, 2007.

'On July 6, 2007, Respondent advised Allstate of the order of contempt. Respondent communicated that to Richard Vavra at Allstate. Mr. Vavra then advised Respondent to send his file to Mr. Ron Getchey an attorney in California and to do that immediately. Respondent at that time was out of town in trial and he advised his secretary to send the file to Allstate. The file was sent immediately. Wallace Saunders did not make a copy of the file. At no time during the period from January 1, 2007 to July 6, 2007, did Respondent ever advise the members of Wallace Saunders of the lost file or of the failure of Respondent to advise Allstate of the status of the case.

'From March 9, 2007 until July 2, 2007, Respondent believed that Allstate was going to pay the underlying judgment plus interest and make the matter moot. Respondent did not believe until July 2, 2007, that Allstate would have to ever respond to the various discovery requests propounded by Deer and Aldridge.

'Respondent was contacted by attorney Ron Getchey and asked to prepare an affidavit. Respondent prepared an affidavit which was then redrafted by Mr. Getchey. Respondent then signed the affidavit prepared by Mr. Getchey.

'Allstate sought relief from the court's order of contempt and the $10,000.00 per day penalty. On August 3, 2007, a hearing was held before Judge Manners. At that hearing Allstate invoked the attorney-client privilege and Respondent was limited in his response because of the assertion of the privilege. Respondent was not able to advise the court that a decision had been made on March 9, 2007, to pay the underlying judgment and he was not permitted to advise the court of the fact that he was extended authority of $500,000.00 on July 2, 2007. On July 16, 2007, Respondent self reported his failure to advise his client.

'At the hearing before Judge Manners on August 3, 2007, Respondent testified that he never sent the orders compelling production of documents to Allstate. Respondent advised the court that he thought he sent the production request to Allstate that went with the objections in February and that he did not think Allstate received any of the discovery requests after mid-February. At the time of the hearing in August on August 3, 2007, Respondent thought the McKinsey request came in after mid-February of 2007. At the hearing Respondent did not have access to the file. Respondent has now reviewed the file and knows that the requests for production and interrogatories dealing with the McKinsey documents were in fact sent to Allstate which is confirmed by the Bokenkroger email.

'After the hearing on August 2, 2007, Judge Manners vacated his previous order and gave Allstate thirty days in which to produce the documents. He set a penalty of $25,000.00 per day for every day after thirty days Allstate did not produce the documents. Allstate continued to refuse to produce the documents until April of 2008 when Allstate was required to produce the same documents in Florida to the Commissioner of Insurance.

'On October 10, 2007, Allstate paid the judgment of Plaintiffs Deer plus interest. Allstate made a claim against Respondent and Wallace Saunders and those claims together with claims of Aldridge for bad faith, negligent claims handling, breach of fiduciary duty and for punitive damages were recently settled for a confidential amount.'

"4.    The Missouri Disciplinary Hearing Panel accepted the parties' stipulation and concluded that the Respondent violated Missouri Rules of Professional Conduct (MRPC) 4-1.3 and 4-1.4(a). The Missouri Supreme Court accepted the decision of the Disciplinary Hearing Panel and concluded that the Respondent violated MRPC 4-1.3 and MRPC 4-1.4. As a result of the violations, on November 13, 2008, the Missouri Supreme Court reprimanded the Respondent.

"5.    On March 12, 2009, the Disciplinary Administrator filed a Formal Complaint in the instant case. The Respondent filed a timely Answer. Later, on April 22, 2009, the Respondent provided an Affidavit admitting the misconduct. The Respondent and the Disciplinary Administrator also entered into a Stipulation of Facts.

### "CONCLUSIONS OF LAW

"1.    Based upon the Respondent's stipulation, the findings of the Missouri Supreme Court, and the above findings of fact, the Hearing Panel concludes as a matter of law, pursuant to Kan. Sup. Ct. R. 202, that the Respondent violated KRPC 1.3 and KRPC 1.4, as detailed below.

"2.    Kan. Sup. Ct. R. 202 provides that '[a] final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state.' The Missouri Supreme Court found the facts as detailed above in ¶ 3 and, as a result, concluded that the Respondent violated its rules regarding diligence and communication.

"3.    Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The Respondent failed to diligently and promptly represent Allstate when he did not timely object or respond to the requests for discovery. Because the Respondent failed to act with reasonable diligence and promptness in representing his client, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter . . . .' In this case, the Respondent violated KRPC 1.4(a) when he failed to advise Allstate that the file had been lost, when he failed to advise Allstate that he did not timely object to or respond to discovery,

when he failed to advise Allstate that he filed a motion, when he failed to advise Allstate that the motion had been denied, when he failed to advise Allstate a motion had been filed to strike their pleadings, and when he failed to advise Allstate that their pleadings were stricken. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

## "AMERICAN BAR ASSOCIATION STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide diligent representation and adequate communication.

"*Mental State.* The Respondent negligently and knowingly violated his duty. The Respondent negligently failed to diligently represent Allstate. The Respondent knowingly failed to properly keep Allstate advised as to the current status of the case.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential harm to Allstate.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* In 2002 and again in 2007, the Respondent participated in the Attorney Diversion Program. In the 2002 case, the Respondent violated KRPC 3.3 and KRPC 3.4 by failing to comply with discovery orders and failing to deal with the Court with candor. In the 2007 case, the Respondent violated KRPC 1.7 by continuing to represent a client when a partner in the Respondent's law firm was representing the plaintiff in a law suit adverse to the Respondent's client.

"*Selfish Motive.* The Respondent's misconduct in this case was motivated by selfishness. The Respondent testified that he did not keep Allstate advised regarding the case because 'he did not want to take the heat' and what happened was 'embarrassing.'

"*A Pattern of Misconduct.* The Respondent engaged in a pattern of misconduct when, for a period of approximately 6 months, the Respondent failed to diligently respond to discovery requests and failed to properly advise his client of the status of the case.

"*Multiple Offenses.* The Respondent violated KRPC 1.3 and KRPC 1.4. As a result, the Respondent committed multiple offenses.

"*Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to the practice of law in the state of Kansas in 1976. At the time of the misconduct, the Respondent had been practicing law for more than 30 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The Respondent fully cooperated in the investigation and the hearing process. The Respondent's attitude during the disciplinary proceedings was one of cooperation and full acknowledgment of the transgressions.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The Respondent enjoys the respect of his peers as evidenced by several letters received by the Hearing Panel.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.43    Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

"RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be censured and that the censure be published in the Kansas Reports. The Respondent recommended that he be informally admonished.

"An informal admonition is insufficient based upon the seriousness of the misconduct. For a period of approximately six months, the Respondent failed to properly inform his client regarding the status of the case. The Respondent's misconduct led to the Court's order sanctioning the Respondent's client $10,000 per day. While Allstate was not required to pay that sanction, there was serious potential injury.

"Based upon the ABA Standards, it appears that the Hearing Panel should consider whether to suspend the Respondent or to censure the Respondent.

"In this case, the Missouri disciplinary authorities received the same evidence and determined that a reprimand was appropriate. The Missouri reprimand is the same as a Kansas published censure. While the decision of the Missouri Supreme

Court is in no way binding on the Hearing Panel or the Kansas Supreme Court, the decision certainly can be considered. Further, the Disciplinary Administrator recommended that the Respondent be censured. Despite the serious nature of the misconduct, published censure is appropriate because the Respondent has taken steps to ensure that he will not repeat this misconduct. The Respondent has a system in place to review documents that are not immediately matched up with a file. Additionally, published censure is appropriate given the compelling mitigating factors.

"Based upon the Respondent's stipulations, the Disciplinary Administrator's recommendation, the above findings of fact, the conclusions of law, the factors in mitigation, and the ABA Standards, as well as the decision of the Missouri Supreme Court, and the Respondent's remedial conduct, the Hearing Panel unanimously recommends that the Respondent be censured by the Kansas Supreme Court. The Hearing Panel further recommends that the censure be published in the Kansas Reports.

"Costs are assessed against the Respondent in an amount to be certified by the office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent filed no exceptions to the panel's final hearing report. Thus, the hearing panel's final report is deemed admitted. Supreme Court Rule 212(c) (2009 Kan. Ct. R. Annot. 337). Upon our review of the entire record we conclude that the panel's findings of fact are supported by clear and convincing evidence and support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions, which establish the misconduct of respondent by clear and convincing evidence. See *In re Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. at 725); see also Supreme Court Rule 211(f).

With respect to the discipline to be imposed, the panel's recommendation of published censure is advisory only and shall not prevent the court from imposing a different discipline. *In re Cline*, 289 Kan. 834, 846, 217 P.3d 455 (2009); Supreme Court Rule 212(f). Under the ABA guidelines, either suspension or reprimand would be appropriate sanctions. A minority of the court supports suspension because of the serious nature of the offense, the fact respondent has had two prior complaints (albeit handled through diversion), and respondent's lengthy delay in fully informing his client of the misplaced discovery and the possible sanctions. Nevertheless, a majority of the court determines that the recommendations of the Disciplinary Administrator and the panel are appropriate.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Paul P. Hasty, Jr., be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2009 Kan. Ct. R. Annot. 272).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs of these proceedings be assessed to the respondent.

DAVIS, C.J., not participating.
JOHN E. SANDERS, District Judge, assigned.