No. 103,860

In the Matter of BRYAN W. SMITH, *Respondent.*

(233 P.3d 737)

Opinion filed June 11, 2010.

*Kimberly L. Knoll,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio,* of Ambrosio & Ambrosio Chtd., of Topeka, argued the cause, and *Bryan W. Smith,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Bryan W. Smith, of Topeka, Kansas, an attorney admitted to the practice of law in Kansas in 1992.

On October 7, 2009, the office of the Disciplinary Administrator filed a formal complaint against the respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer to the formal complaint on October 9, 2009. On October 16, 2009, the respondent provided a proposed probation plan. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 4, 2009, where the respondent was personally present and was represented by counsel. At the hearing, a joint stipulation of facts signed by all parties was accepted. The hearing panel determined that respondent violated KRPC 8.4(b) (2009 Kan. Ct. R. Annot. 602) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer), and 8.4(g) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"2. For years, the Respondent practiced law with Stephen Cavanaugh and Thomas Lemon, in Topeka, Kansas. At some point, after becoming an attorney, the Respondent developed a serious alcohol problem.

"3. One day over lunch, in March, 2008, the Respondent drank alcohol to excess and became intoxicated. As a result, his partner drove him home.

"4. In April, 2008, at the behest of his partners, the Respondent participated in a 28-day inpatient alcohol and drug treatment program at Valley Hope. When he returned to work, he was required to enter into a contract which greatly limited his ownership interest in the firm if he continued to drink alcohol.

"5. Following the release from treatment and the execution of the contract with his partners, the Respondent continued to drink alcohol.

"6. On June 22, 2008, the Respondent traveled from Topeka, Kansas, to the KCI Airport. During the drive, the Respondent consumed a fifth of vodka. At KCI, the Respondent boarded a plane to Memphis, Tennessee.

"7. During the flight, the Respondent continued to consume alcoholic beverages. The Respondent was rather disruptive on the plane. Security met the Respondent as he deplaned. At that time, the Respondent was arrested for public intoxication and disorderly conduct, misdemeanor offenses. While *en route* to the police station, the Respondent damaged a police car window. As a result, the Respondent was also charged with vandalism, a felony.

"8. The Respondent retained an attorney in Memphis, Tennessee, and was able to reach a settlement of the pending criminal case. As a result, the Respondent entered a plea of guilty to public intoxication and disorderly conduct. The vandalism charge was dismissed. The Respondent paid for the damage caused to the window in the amount of $90.12.

"9. As a result of his arrest, [] Cavanaugh, Smith & Lemon, P.A. terminated his employment.

"10. Following the Respondent's arrest and employment termination, the Respondent continued to drink alcoholic beverages.

"11. The Respondent self-reported his conduct to the Disciplinary Administrator.

"12. In July, 2008, the Respondent returned to Valley Hope for detoxification. Then, the Respondent participated in an inpatient drug and alcohol treatment program in Oklahoma for a period of 90 days.

"13. After being released from the treatment program in Oklahoma, the Respondent continued to drink alcoholic beverages.

"14. On February 27, 2009, the Respondent entered the Attorney Diversion Program with the Disciplinary Administrator's office. In the Diversion Agreement, the Respondent acknowledged that he is addicted to alcohol, stipulated that he violated KRPC 8.4(b), and agreed to comply with treatment recommendations and abstain from consuming alcoholic beverages.

"15. On June 3, 2009, and on July 28, 2009, the Respondent informed the Disciplinary Administrator's office that he had violated the terms and conditions of the Diversion Agreement by consuming alcoholic beverages on three separate occasions.

"16. The Disciplinary Administrator informed the Respondent that if he again violated the Diversion Agreement, the Disciplinary Administrator would seek the revocation of the Diversion Agreement.

"17. In September, 2009, the Respondent again consumed alcoholic beverages, in violation of his diversion agreement.

"18. On September 15, 2009, the Respondent was again admitted to the Valley Hope treatment program for detoxification. Following his detoxification, the Respondent participated in seven days of inpatient drug and alcohol treatment, again, at Valley Hope.

"19. On September 16, 2009, the Disciplinary Administrator learned that the Respondent had again consumed alcoholic beverages. As a result, the Review Committee terminated the Respondent's participation in the Attorney Diversion Program.

"20. As of the date of the hearing on the Formal Complaint, November 4, 2009, the Respondent reported that he had not consumed any alcoholic beverages since September 15, 2009.

### "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 8.4(b) and KRPC 8.4(g), as detailed below.

"2. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent was found guilty by his plea of public intoxication and disorderly conduct. Thus, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer in other respects, in violation of KRPC 8.4(b).

"3. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent's conduct on the drive from Topeka to KCI, the Respondent's conduct on the airplane, the Respondent's conduct in the police car in Memphis, Tennessee, and the Respondent's repeated violations of his diversion agreement, adversely reflect on his fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

### "AMERICAN BAR ASSOCIATION
### STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing

Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to the public to maintain his personal integrity.

"*Mental State*. The Respondent knowingly violated his duty.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*A Pattern of Misconduct*. The Respondent engaged in a pattern of misconduct when he repeatedly violated his diversion agreement.

"*Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas in 1992. At the time of the misconduct, the Respondent had been practicing law for approximately 16 years.

"*Illegal Conduct*. The Respondent was convicted of public intoxication and disorderly conduct. As such, the Respondent engaged in illegal conduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record*. The Respondent has not previously been disciplined.

"*Absence of a Dishonest or Selfish Motive*. The Respondent's misconduct was not motivated by dishonesty or selfishness. It appears that the Respondent's misconduct is the obvious result of alcoholism.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The Respondent clearly suffers from alcoholism. Alcoholism is a personal problem and it contributed to the Respondent's misconduct.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The Respondent fully and freely acknowledged his misconduct.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The Respondent enjoys an excellent reputation as an attorney in Topeka, Kansas.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"On October 16, 2009, the Respondent provided a proposed probation plan. At the hearing on this matter, the Disciplinary Administrator recommended that the Respondent be placed on probation pursuant to the terms and conditions outlined in the Respondent's proposed plan. Despite the fact that the Respondent provided the proposed plan of probation, the Respondent requested that the Hearing Panel recommend to the Kansas Supreme Court that the Respondent be censured and that censure be published in the Kansas Reports.

"The Kansas Supreme Court adopted a detailed rule regarding the placement of Respondents on probation. *See* Kan. Sup. Ct. R. 211(g). That rules provides:

'(1)    If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2)    If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)    the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)    the misconduct can be corrected by probation; and

(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

Thus, the Hearing Panel may recommend that the Respondent be placed on probation only when (1) the Respondent develops a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint; (2) the Respondent puts the proposed plan of probation into effect prior to the hearing; (3) the misconduct can be corrected by probation; and (4) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas. In this case, the Respondent has met the threshold requirements of being placed on probation. The Respondent developed a workable, substantial, and detailed plan of probation[;] he provided a copy of the plan to the Disciplinary Administrator and each member of the Hearing Panel more than 10 days before the hearing[;] he put the plan of probation into effect[;] the misconduct can be corrected by probation[;] and placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of one year. However, the Hearing Panel recommends that the Court suspend the imposition of the suspension and place the Respondent on probation for a period of two years, subject to the following terms and conditions:

'1.   The Respondent shall abstain from the consumption of alcoholic beverages or cereal malt beverages and the use of illegal drugs. If the Respondent consumes any alcoholic beverages or cereal malt beverages or uses any illegal drugs, the Respondent shall immediately report the information to the Disciplinary Administrator. If the Respondent consumes any alcoholic beverages or cereal malt beverages or uses any illegal drugs, the Disciplinary Administrator shall immediately institute probation revocation proceedings and seek the suspension of the Respondent's license to practice law.

'2.   The Respondent shall continue to be monitored by a member of the Kansas Impaired Lawyers Assistance Program throughout the period of probation. In the event the Respondent's monitor or the director of the Kansas Impaired Lawyers Assistance Program learns that the Respondent has not maintained his sobriety, the monitor or the director shall immediately report the information to the Disciplinary Administrator's office.

'3.   Throughout the period of probation, the Respondent shall comply with any and all requests or requirements made by his monitor or the director of the Kansas Impaired Lawyers Assistance Program, including but not limited to requests or requirements to submit to alcohol or drug tests, to submit to an alcohol and drug evaluation, to participate in alcohol or drug education, and to participate in alcohol or drug treatment.

'4.   The Respondent shall attend a minimum of three Alcoholics Anonymous meetings each week throughout the period of probation. The Respondent shall maintain proof of attendance. The Respondent shall provide the proof of attend-

ance to his monitor, the director of the Kansas Impaired Lawyers Assistance Program, and the Disciplinary Administrator's office upon request.

'5. The Respondent shall obtain an Alcoholics Anonymous sponsor. The sponsor must be willing to share information regarding the Respondent's sobriety to the Respondent's monitor. The Respondent shall have an Alcoholics Anonymous sponsor throughout the period of probation.

'6. Throughout the period of treatment, the monitor shall provide quarterly reports regarding the Respondent's sobriety, alcohol and drug testing, AA attendance, and compliance with monitoring.

'7. The Respondent shall continue to work with Eisenbarth & Associates. The Respondent shall follow all recommendations made by treatment providers at Eisenbarth & Associates. In the event the treatment providers at Eisenbarth & Associates determine that the Respondent is no longer in need of treatment, the treatment providers shall notify the Disciplinary Administrator that the Respondent has been discharged from treatment. Throughout the period of treatment, Eisenbarth & Associates shall provide quarterly reports regarding the Respondent's progress in treatment.

'8. The Respondent shall execute sufficient releases to enable his monitor, the director of the Kansas Impaired Lawyers Assistance Program, and the Disciplinary Administrator, as well as any alcohol and drug educators or treatment providers to exchange information regarding the Respondent's sobriety, alcohol and drug testing, alcohol and drug education, and alcohol and drug treatment.

'9. The Respondent shall cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the Respondent shall timely provide such information.

'10. The Respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the Respondent shall immediately report such violation to the Disciplinary Administrator.'

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. *In re Lober*, 276 Kan. 633, 636, 78 P.3d 442 (2003). Attorney misconduct must be established by clear and convincing evidence. *In re Patterson*, 289 Kan.

131, 133-34, 209 P.3d 692 (2009); Supreme Court Rule 211(f) (2009 Kan. Ct. R. Annot. 321). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.' " 289 Kan. at 133-34 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]). The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that respondent Bryan W. Smith be suspended for 1 year from the practice of law in the state of Kansas, see Supreme Court Rule 203(a)(2) (2009 Kan. Ct. R. Annot. 272), but that imposition of the suspension be suspended, provided that respondent continues to abide by the terms of his probation plan for 2 years from the date of the filing of this opinion. In addition, this court hereby imposes an additional probation term requiring respondent Smith to obtain, within 30 days of the filing of this opinion, a supervisor for his law practice. The supervisor and the terms of the supervision must be acceptable to the Disciplinary Administrator, and the respondent's law practice supervision must continue until the end of the probation.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by his probation plan and/or the additional term set forth in the preceding paragraph, and his suspension thus takes effect, the respondent shall comply with Supreme Court Rule 218 (2009 Kan. Ct. R. Annot. 361). In the further event that respondent seeks reinstatement to the practice of law at the conclusion of his suspension, he shall comply with Supreme Court Rule 219 (2009 Kan. Ct. R. Annot. 376).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

DAVIS, C.J., not participating.
RICHARD B. WALKER, District Judge, assigned.